## CRAWFORD ET AL. vs. BARKLEY.

1. Where one, for himself and as the agent of a third person, purchases land on their joint account, but exceeds his authority in the price agreed to be paid, such third person, in the absence of collusion between the vendor and the agent, or of notice on the part of the former that the latter was transcending his powers, must either abide by the bargain, or repudiate it in toto. A principal cannot, of his own mere authority, ratify a contract, made by his agent, in part, and repudiate it as to the rest. He must either adopt the whole, or none.

2. If, in such case, the principal should repudiate the contract, the agent would be bound by it, and the lien of the vendor for the unpaid purchase money could be enforced against him.

3. B., for himself and as the agent of C., purchased land on their joint account, and afterwards relinquished his interest therein to C. The vendor filed his bill against both, to subject the land to the payment of the purchase money, and B., having failed to answer, a decree *pro confesso* was rendered against him. *Held*—That B. was a competent witness for the complainant to prove the price agreed to be paid; that if his interest was not balanced, it preponderated against the party, by whom he was introduced.

ERROR to the Chancery Court of Chambers. Tried before the Hon. W. W. Mason.

ALLISON, for the plaintiffs in error:

1. The purchase was made by a special agent, limited to pay three thousand dollars, and if he exceeded that amount the principal was not bound for the excess, but the agent alone.—2 Kent's Com. 619-20; Roe v. Predeux, 10 East. 158.

2. The inducement for the purchase, on the part of Crawford, was the entire premises, and the vendor having suffered him to pay out his money, without having notified him that the agent had exceeded his power, can have no equitable lien upon the premises.—2 Story's Com. 465, § 1219.

3. The agent having exceeded his power, was individually bound for the amount of the excess, and the decree *pro confesso* ascertained his liability.—Hartley et al. v. Bloodgood, 16 Ala. 233 ; Arnold v. Sheppard, 6 ib. 299.

4. The witness Barkley, was directly interested in fixing the liability upon the plaintiff in error, and by so doing, he would discharge or lighten his own liabilty, which had been fixed and

ascertained against him by the decree *pro confesso.* His evidence should have been excluded.—McCall v. Sinclair, 1 Stew. 764; Montandon & Co. v. Deas, 14 Ala. 33; Waller v. Gibbs, Labuzan & Co., 10 ib. 131; Anderson v. Snow & Co. 8 ib. 504; Goodwin & McKey v. Morrow & Co., 8 ib. 486; Scott, sur. &c., v. Jones et al., 5 ib. 694; The Heirs of Holman et al. v. Bank of Norfolk, 12 ib. 369.

5. The hundred and seventy dollars collected by the defendant in error, on the mill books, and stated in the answer as a payment, is responsive to the bill, and should have been allowed as such.—Hogan et al. v. Smith, et al., 16 Ala. 600; The Huntsville Bank v. Marshall et al. 4 ib. 60; Lake v. Gilchrist, 7 ib. 955; Smith v. Bush, 1 Johns. Ch. R. 459.

RICHARDS, with S. F. RICE, for the defendant.

CHILTON, J.—William Barkley, the defendant in error, having purchased from McLemore and Adams an interest of one moiety in certain lands, and holding the title bond of McLemore, in whom was vested the legal title to the same, sold his interest to Geo. Crawford and Andrew Barkley, the plaintiffs in error, as is alleged in the bill, for two thousand dollars; in consideration of which sale, the bill charges, they agreed to pay McLemore what Wm. Barkley still owed for the land, and to pay the residue to him on the 25th Dec. 1844; that the amount due McLemore, not then being known, it was determined to postpone the execution of a note for the purchase money, until it should be ascertained, and that the complainant transfered the bond he held on McLemore to said Crawford and Andrew Barkley. The complainant then alleges the amount he owed McLemore was $1295 37, which the defendants afterwards paid, and that since that time they have paid him about $100, leaving due him $604 63, besides interest from 25th Dec. 1844. It is further alleged that upon the payment to McLemore of the $1295 37, he executed titles to the entire lands, the defendants having purchased from him and Adams the other moiety. The complainant seeks a sale of the land for the payment of the remaining portion of the purchase money.

A decree *pro confesso* was taken against Andrew Barkley, and the defendant Crawford answered the bill, and admitt d

that the lands were purchased of the complainant by Andrew Barkley on the joint account of said Andrew and himself, but states that he furnished said Andrew with money to make the said purchase, and instructed him to give $3000 for the entire tract, and if it could not be had for that, to return him the money and not to conclude the contract, and that it was agreed, if the purchase could be made, Andrew Barkley was to have one-half the profits which would accrue upon the same. The defendant Crawford insists in his answer that he has more than paid the price which Andrew Barkley was authorised to give for the land; that he was not informed but that in the purchase he had strictly complied with his instructions, and that had he known that one dollar more than $3000 had been promised for said land, he would have refused the purchase. The answer admits having obtained title to the lands from McLemore, and insists that at the time he so obtained such title, he only owed, as purchase money to complainant, the sum of $200, alleging that $1500 and not $2000 was the sum agreed to be paid to complainant, and that of this sum he has since paid $100, and that the complainant collected on the books kept of his (defendant's) mill, the sum of $170, which he converted to his own use. Defendant Crawford further states that Andrew Barkley has relinquished to him all his interest in said lands, and that he is now the sole owner of the same, and has them in possession with complete title thereto; that if Andrew Barkley ever agreed to pay the complainant $2000 for his moiety in said lands, it was without his authority, and a fraud upon him, and that he is not bound to pay more than the sum of $1500, as he understood the contract.

William Williams, a witness examined on the part of the complainant, fully sustains the bill, as to the amount to be paid the complainant. Andrew Barkley was also examined, under an order obtained for that purpose by the complainant, and proves the price to be paid the complainant was $2000. His deposition is objected to, however, on the ground of interest. If Andrew Barkley was the agent of Crawford to conclude the purchase on their joint account, and exceeded his authority in agreeing to give $3500, when he was limited to $3000, as it is not shown that there was any collusion between him and the complainant to defraud Crawford, or that the said complainant knew that he was exceeding his authority, it is perfectly clear that Crawford

Crawford et al. v. Barkley.

must either repudiate his act in totò, or stand by the bargain which he has made with the complainant. The established rule is that the principal cannot of his own mere authority ratify a transaction in part and repudiate it as to the rest. He must either adopt the whole or none.—Story on Agency, 245, § 250, and cases cited in note. If Crawford takes the land under his agent's purchase, he must pay the price which his agent agreed to give, and look to his agent for indemnity, if he has defrauded him. It appears that in this case he tenders no recision of the contract, but proposes to hold on to the land and to avoid the payment of so much of the price, as his agent was not authorised by him to give. This we have seen he cannot do. But if the principal should repudiate the act of his agent, the agent himself would be bound by the contract, and the lien of the vendor could be enforced as against him, so that the complainant would be secure in his purchase money in either event.

It is, however, contended that Andrew Barkley is incompetent to testify on the ground of interest. It occurs to us, if this witness' interest is not balanced, it clearly preponderates against the party who introduces him. He has sold out his interest in the lands sought to be condemned to his co-defendant Crawford, and he has admitted by his default that he and Crawford jointly owed the sum of $604 63, with interest from the 25th Dec. 1844, as a balance due upon the purchase of it. The bill is to subject the land for the payment of whatever sum may be found due, and a reference was awarded to ascertain this sum. Now suppose this witness had proved that only one hundred instead of six hundred dollars were due, is it not clear that the complainant, notwithstanding the decree *pro confesso*, could only have had a decree for that sum? We think it is. The witness was then interested in reducing the amount which was a lien on the land to as small a sum as possible. This is unlike the case of a witness confessedly liable for a demand, and upon which he can be held liable in an action to be brought against him, seeking by his own testimony to compel another to share it with him. The decree *pro confesso* against the witness, who resides out of the State, is but a formal proceeding allowed for the purposes of the trial in this cause, and his co-defendant putting the matter of the complainant's demand in issue, no decree could be rendered against either defendant upon this bill, in the absence of

proof. He is then interested in making such proof as would prevent a decree altogether, or as would reduce the amount as much as may be, and in this view, is interested for his co-defendant, but. not on the side of the complainant who examines him. It may also be a question, whether, as he acted as agent, he is not *ex necessitate* competent to prove the amount agreed to be paid, and his proof goes no further. The case of Montandon & Co. v. Deas, 14 Ala. 33, is in point to show that he should not be excluded because of his being a party defendant, a decree *pro confesso* having been rendered against him.

As to the $170, said in the answer to have been collected by the complainant on the mill books, it is very clear the answer is not responsive to the bill, and that being the new matter avered by way of set off, it must be proved. No proof appears to have been adduced concerning it, and it was consequently properly disallowed. We are unable to perceive any error in the chancellor's decree, and it is consequently affirmed.