D. C. COLEMAN, Plaintiff, *v.* BENJAMIN STARK, Defendant.

*In Chancery.—Adjourned from Washington.*

1. Principal bound by the acts of his agent. Principal must adopt or reject the act of his agent as an entirety.
2. Where one of the two must be injured by an act done, he who caused it should suffer rather than another.

ON the 20th day of March, 1850, Lownsdale, Coffin and Chapman, as proprietors of the town of Portland, conveyed a certain parcel of land therein situate to T. A. Hall, W. Hall and S. S. White. On the 13th day of August, 1853, W. Hall conveyed to Dennison. On the 3d day of January, 1851, S. S. White and T. A. Hall conveyed to F. M. Smith. On the 1st day of August, 1851, F. M. Smith conveyed to Flannery. June 5th, 1852, Flannery conveyed to B. F. Smith and S. B. Marye. January 10th, 1853, Marye conveyed to Dennison. July 15, 1853, B. F. Smith and Dennison conveyed to Coleman, so that Coleman thus became vested with such title to said land as Lownsdale, Coffin and Chapman had on the 20th of March, 1850.

On the 16th day of September, 1853, Stark made a deed of the same property to Coleman, and covenanted with him that if ever it should be made to appear that the said title which Coleman derived from Dennison and Smith was good as against him, then he would refund to Coleman whatever he received from him for said property. On the 1st day of March, 1850, in San Francisco, Lownsdale and Stark divided the town of Portland between themselves by deed of partition, in which Stark agreed to ratify all sales made by Lownsdale prior to that time. On the 13th of April ensuing, Coffin and Chapman ratified this act of partition with a qualification, that all lots, sold prior to notice of such partition, should stand on the same footing with lots sold before it was made.

On the 15th day of the same month, Couch, as the attorney in fact of Stark, agreed to this qualified ratification by Coffin and Chapman. According to the division between Lownsdale and Stark, the lot in dispute was in that part of the town allotted to Stark, and was not one of the sales ratified by him in the deed of division, unless the said agreement of Couch be regarded in law as the agreement of Stark. On the 26th. day of September, 1849, Stark executed to Couch a power of attorney, authorizing him "to do any and all acts during Stark's temporary absence from the territory, which Stark might lawfully do if personally present. Couch testifies that he had this power of attorney when he agreed to the modification of said deed of partition by Coffin and Chapman. Stark says that the said power of attorney was revoked on the 17th day of January, 1850, by the appointment of George Sherman, and that Couch had notice of such revocation about the first of the following month. Couch states that before making the said agreement with Coffin and Chapman, he had notice that Stark had appointed another agent in respect to real estate, and that he informed Coffin and Chapman of that fact.

*M. Chinn*, for plaintiff.

*Hamilton & Stark*, for defendant.

WILLIAMS, C. J. Taking the answer and evidence together, it is quite evident that there was no revocation of the power of attorney to Couch, except a notice from Stark to him that Sherman had been appointed agent in respect to real estate. This notice to Couch did not necessarily revoke his power to act as Stark's attorney, for a man may have two agents at the same place for the transaction of the same kind of business, and it cannot be denied in this case that Sherman and Couch were both acting at the same time as agents for Stark, in Portland. Stark admits that Couch was his agent for some purposes at the time he made the arrangements with Coffin and Chapman, but denies that he had authority to do that

act. Stark's power of attorney to Couch was unlimited in its terms, and what precise portion of the power so conferred was revoked by Stark does not appear, and was not even known to Couch; for he testifies that when he signed the contract with Coffin and Chapman, he believed he had authority to do it.

Stark sent the said deed between him and Lownsdale to Couch, in Portland, so that their arrangements might there be confirmed by others, and entirely consummated, and thus treated Couch as his agent in regard to that matter. Coffin and Chapman, knowing that Couch had the aforesaid power of attorney, and finding the said agreement in his hands, had a right to suppose that he was authorized to act for Stark; and Coffin testifies that if he had not supposed that such was the fact, he would not have ratified the said deed of partition. True, Stark denies that Couch could bind him in that transaction, but the broad terms of the power of attorney, the insufficiency and uncertainty of the alleged revocation, the fact that Stark sent the deed of partition to Couch, and the belief of Couch that he had authority to act as he did, go far to overthrow that position.

Admitting that the power to bind Stark, in this matter, had been transferred from Couch to Sherman, then it does not follow that Stark is not bound; for the evidence shows that Sherman and Couch acted together, and, as far as parol confirmation could go, Sherman confirmed the conduct of Couch in assenting to the said agreement. Stark, in person, could certainly have adopted the act of Couch by parol so as to bind himself; and if the power of attorney to Sherman was like that to Couch, then Stark would be bound by Sherman's acts; for Sherman might do whatever Stark "could lawfully do if personally present." Stark says, in his answer, that the concurrence of Coffin and Chapman, in his arrangement with Lownsdale, was not necessary to its validity; but the bill and exhibits show that they were joint proprietors with Lownsdale in the town of Portland, and that they were the only persons contemplated in said deed of partition, whose refusal to ratify it in six months should give Stark a right

to have it cancelled; and these facts are not controverted by the answer.

More than this, the bill shows that Stark has acted and occupied in accordance with the arrangement between him and Lownsdale, and so has taken the benefit of the ratification by Coffin and Chapman, which this answer does not deny, but avers that the agreement between Couch, Coffin and Chapman has been repudiated by defendant.

That Coffin and Chapman were joint proprietors with Lownsdale, in the town of Portland, on the 1st of March, 1850, is not to be disputed in this case; therefore, their ratification of the deed of that date, between Lownsdale and Stark, was necessary to give Stark undisturbed possession of the land therein set apart to him. Stark must adopt or reject that ratification as an entirety. He cannot avail himself of what operates to his advantage, and discard that which he dislikes.

Prior to the 1st day of March, 1850, it seems that Lownsdale, Coffin and Chapman made sales in Portland without restriction, which were valid; and it would be a very great hardship on purchasers in good faith if the sales made by the same persons, just after that date, were void, on account of a private arrangement between Stark and Lownsdale in California, of the existence of which, nothing was known in Portland. Coffin and Chapman's modification of the said deed of partition was manifestly just, and Couch, in ratifying it, was only doing what he knew Stark, in good conscience, ought to do. No great injury is worked to Stark if the understanding between Couch, Coffin and Chapman is regarded as binding upon him, for then he will be entitled to the money for the lots sold by Lownsdale, Coffin and Chapman, after the said deed of partition was made, and before notice of its existence in Portland. But if such understanding be held void, then Coleman must lose the money which he has paid Dennison and Smith for the lot; and if one or the other of the parties must be injured by the act of Couch, it should be Stark, and not Coleman, upon the principle that where

one is the cause or occasion of a mischievous act, he must suffer the consequences thereof, rather than another who has had nothing to do with it.

Admitting Lownsdale, Coffin and Chapman to be in the joint occupation of the town site of Portland, and claiming as proprietors, which is not denied in this case, it may with great reason be urged, that the sale of a lot by them, when Stark was out of the country, to a person ignorant of his claim, would pass a perfect right as against Stark. Equity holds that Coleman has made it appear, in this case, that his title to the land in dispute, derived from Dennison and Smith, is good against Stark, and therefore Coleman is entitled to recover back the $300 he has paid Stark for said land, and to an injunction to restrain Stark from collecting the balance of the $800 note given on the purchase money.

Decree for plaintiff.