## The President, Directors and Company of the Peninsular Bank v. James Hanmer.

*Contract by corporation. Agent, authority of affirmed by acquiescence in his·acts.* A contract was entered into by the cashier in behalf of a bank, by which security was given by a debtor, on long time, to a creditor, in the interest and on the motion and arrangement of the cashier, who, in order to procure the assent of the creditor, made and delivered a bond of indemnity against a prior mortgage on the property covered by the collateral security. The bank received the benefit of this transaction, and defended the creditor against a suit to foreclose this prior mortgage. *Held,* that the bank could not dispute the authority of the cashier to execute the contract of indemnity.·

*Cashier, general authority of.* The extent of the general authority of the cashier of a bank is a question of law (*F. & M. Bank v.·Troy City Bank,* 1 *Doug. Mich.* 457), and, in the absence of proof to the contrary, he will be held to have authority to turn out assets of the bank in payment of its indebtedness.—*Kimball v. Cleveland,* 4 *Mich.* 606.

*Contract must be affirmed or rescinded in toto.* Having appropriated the benefits of a contract, the bank must affirm or rescind *in toto.* It cannot disaffirm,it as to those parts which impose an obligation, and affirm it so far as it operates to its advantage.

*Heard April 7th and 10th. Decided April 24th.*

Error to Wayne Circuit.

Hanmer sued the bank upon an agreement of indemnity signed by H. H. Brown, cashier of the bank, and sealed with the corporate seal, and which was in the following words, to wit:

"In consideration of one dollar to the President, Directors and Company of the Peninsular Bank in hand paid by James

Hanmer, they do hereby agree to and with said Hanmer that they will indemnify and save harmless the said Hanmer and his assigns of and from all loss or damage by reason of or growing out of a certain mortgage heretofore made by Nathaniel P. Jacobs and wife to Chas. Seymour, dated August 4th, 1855, recorded in Liber 23, p. 669, and upon which there is now due the sum of eleven hundred dollars, or thereabouts; said mortgage having been given and executed on lot six in military reservation in the city of Detroit, being the N. W. corner lot of Fort and Wayne streets. Said Hanmer having this day taken a mortgage on said premises for five thousand dollars, this instrument is intended to operate as a full indemnity and protection to him against the first mortgage hereinbefore described. In witness whereof, the said parties of the first part hereto have set their official seal and the name of their cashier.

On this 15th day of September, 1857.

[Seal.]          H. H. BROWN, *Cashier.*

In presence of D. BETHUNE DUFFIELD."

Defendant plead the general issue, and denied by affidavit the execution of said instrument declared upon.

The facts were as follows: In September, 1857, the bank was much embarrassed. One N. P. Jacobs was largely indebted to the bank and had failed to meet his paper. Hanmer kept his account at the bank, and had over $5000 to his credit. Brown wished to get this amount to apply on Jacobs' debt. He therefore proposed to Hanmer that he should loan this sum to Jacobs, to be secured by Jacobs' bond and a mortgage on his property. On this property was a prior mortgage which had been made by Jacobs to Chas. Seymour, and which Jacobs claimed had been satisfied. Hanmer was willing to make the loan, but only on condition that the bank should indemnify him against said prior mortgage. He knew that his money, if loaned, was going directly to the bank. He did not see Jacobs at all in the transaction. The bank gave the

14 MICH.—W.

indemnity by Brown. The money went directly to the bank without going into the hands of Jacobs.

The Seymour mortgage was afterwards foreclosed, and the bank, being notified by Hanmer, defended the case by its attorney. Hanmer was obliged to pay about $1800 under the foreclosure decree. Hanmer then sued the bank on its indemnity in assumpsit, and recovered a verdict.

This last case the bank now brings to this Court on error. The bank defends on the ground that Brown had no authority to give the indemnity. There were fifteen assignments of error. The first *eight* arise on questions of evidence. The other *seven* on instructions given the jury, or requests refused.

The Court held, and instructed the jury in substance that the authority of Brown to bind the bank by the indemnity was, on the evidence, a question of fact for the jury; and that if the jury found that the directors and stockholders had for years permitted the entire control and management of the bank to Brown, and this business had been done by him for the benefit of the bank, this would authorize the jury to find for the plaintiff.

This doctrine the defendant denied, and insisted that the bank could not be liable unless express authority was shown from the directors to the cashier to execute this instrument, or like instruments before this.

*D. C. Holbrook*, for plaintiff in error.

1. The authority of the cashier was a question of law for the court, and no implied authority of the cashier was shown.— 1 *Doug. Mich.* 457; 21 *Barb. S. C.* 196; 5 *Denio*, 283, 520; 36 *Barb.* 332; 14 *Id.* 358.

The giving of indemnities is not a part of the general duty of a cashier, and there was not shown any resolution giving him authority.— 12 *Barb. S. C.* 196.

The only other way he could get it was by the acquiescence of the directors with knowledge of such previous acts.

*G. V. N. Lothrop*, for defendant in error.

1. An agent of a corporation, like an agent of a natural power, may be appointed by parol, and he may derive his authority from express or implied delegation. In this country this proposition now needs no citation of authorities.—1 *Doug. Mich.* 110.

2. And when an agent is held out, or permitted to hold himself out, as clothed with any power, it may be *presumed* that he has been clothed with such power in due form.—12 *Wheat.* 70; 12 *Barb.* 67; 26 *Me.* 428; 36 *E. L. & Eq.* 142.

3. The authority of the agent may be implied or presumed from the conduct, active or permissive, of the corporation.— *A. & A. on Corp.* 270 (3d ed.); 14 *Barb.* 358; 10 *Rich. S. C.* 95; 21 *Wend.* 296.

And this is equally true, though his acts are in violation of the corporate by-laws.—1 *N. Y.* 290; 12 *Cush.* 1.

4. All the contracts made by a cashier, within the powers of the bank, are good, where he is suffered by the directors to take the general management of the bank.—4 *Bosw.* 420; 11 *Ohio St.* 153; 32 *Barb.* 9.

And the same is true of agents of other corporations.—34 *N. H.* 378; 14 *Barb.* 361; 17 *Ill.* 40; 7 *Metc.* 222; 1 *Allen*, 34.

It matters little in this case what are the ordinary powers of a cashier. The evidence shows that under the name of cashier Brown was sole and absolute *Manager* of the bank. From June 1851, till September 27, 1857, there had not been a meeting of stock holders, and no election of directors.

5. Brown, as sole general manager, was authorized to use the corporate seal, where he thought it required, in the conduct of its lawful business. No formal vote is necessary to enable a cashier to affix the seal.—7 *Hill* 91; 4 *Mich.* 608.

Nor is it of any consequence that the by-laws made the president the custodian of the seal. The by-laws were dead letters even in the bank, and when they ceased to be observed there, they were inert outside.—1 *N. Y.* 292.

6. If a corporation knowingly claims, retains, or uses the benefits of a contract made by its officers or agents, without authority, this amounts to a ratification.—7 *Cranch*, 299; 1 *Pick.* 372; 19 *Johns.* 60; 24 *Me.* 36; 11 *Ohio, N. S.* 153.

And mere acquiescence will imply ratification.–19 *N. Y.* 207.

7. A cashier of a bank has authority to collect debts due the bank, and to take all usual means to do so. He needs no special delegation of authority to borrow money for the bank. It is an ordinary power.—15 *N. Y.* 9; 19 *Id.* 152.

COOLEY J.

The action was brought by Hanmer in the Court below upon a contract executed in the name of the bank by Brown, its cashier, to indemnify Hanmer against a certain mortgage made by Nathaniel P. Jacobs and wife to Charles Seymour. The contract is under the corporate seal, but it is claimed by the bank that it was entered into without authority, inasmuch as there was no action of the directors authorizing it, and the by-laws required all contracts to be signed by the president. On the other hand Hanmer produced evidence that for a considerable period before and after the giving of this paper, the whole management of the bank was virtually in the hands of Brown; the directors seldom or never meeting unless to declare dividends, and very little attention being paid to the rules prescribed by the by-laws for the transaction of business. The case comes before us on exceptions, and the assignments of error relate mainly to the admission of evidence tending to show such a course of business on the part of the bank as should make this contract binding upon it, and to the rulings of the Circuit Judge thereon.

In order to judge of the importance of this testimony and the rulings, it is necessary to look at the transaction out of which this contract of indemnity grew. The date of the instrument was September 15, 1857. Brown's testimony was taken in the case, and he testified as follows: " There was great financial trouble here then. The bank owed Hanmer

over $5,000; he told me he did not want the money, but wanted to be sure it was secure. I told him I thought I could negotiate a loan, by which the bank would be benefitted, and place his money where it would be secure. Jacobs owed the bank; on my insisting that he should reduce his debt to the bank, he agreed to mortgage his house on Fort street; I then made the negotiation; Jacobs assuring me that the property was unincumbered except a conditional mortgage to secure the payment of the purchase money of property at the corner of Jefferson Avenue and Wayne street, bought of Seymour and Martin: subsequently he brought me a discharge of the mortgage. After the mortgage to Hanmer had been made out, an abstract of title to Jacobs was procured, showing one or two mortgages on it. I then told Hanmer the facts as Jacobs had stated them to me, and told him there could be no difficulty as Jacobs had performed his contract with Seymour. Hanmer was not satisfied. I referred him to Mr. Duffield, and told him that the Bank would indemnify him against the Seymour mortgage. Mr. Duffield prepared the indemnity bond, and I signed and executed it. Hanmer paid the money to the bank, and the bank gave Jacobs credit to that amount on its books, and so reduced his indebtedness."

It will be seen from this evidence that the transaction resulting in this contract, was one originated and managed by Brown, not primarily for the benefit of either Jacobs or Hanmer, but of the bank itself. The bank held $5,000 of Hanmer's money, which was liable to be drawn out at any time, but which the bank officers were anxious to retain. At the same time they were desirous of obtaining either payment or security from Jacobs. Through Brown's management the two operations of obtaining ready money on the debt of Jacobs, and paying their own debt to Hanmer in long paper, were combined in one, by taking the security from Jacobs to Hanmer, instead of having it made to the bank and then assigned to Hanmer. Jacobs and Hanmer did not deal with each other at all in the transaction, but both with the bank; and

the mortgage which Jacobs gave was really given to secure his debt to the bank, and was only made to Hanmer because, under the arrangement made by Brown, the bank was to pay a debt of equal amount with it. We are unable to perceive that this case stands on any different footing than if Brown had first obtained securities from Jacobs to the bank, and then transferred them to Hanmer in satisfaction of his deposits.

We have then to see whether a guaranty, given by the cashier in the name of the bank, on turning out its assets in satisfaction of a demand against the bank, is binding upon the corporation under the circumstances appearing here. The extent of the general powers of the cashier of a bank is a question of law.—*Farmers' and Mechanics' Bank v. Troy City Bank*, 1 *Doug. Mich.* 457. In the absence of proof to the contrary, he will be presumed to have authority to turn out the notes and assets of the bank in payment of its indebtedness.—*Kimball v. Cleveland*, 4 *Mich.* 606. There is nothing in the by-laws put in evidence in this case which can fairly be held restrictive of this power. But no such payment can be held to be an absolute discharge of the original indebtedness unless agreed to be accepted as such; and the question here is not so much whether Brown had authority to give the contract of indemnity, as whether Hanmer assented to receive the mortgage in payment, without an indemnity. If he did not,—as is clear in this case,—then this indemnity contract is either valid and available to Hanmer, or his original demand against the bank is still due him, subject only to a deduction of what he has made from the Jacobs mortgage. Admitting the contract by Brown to be in excess of his authority, the bank could only affirm or rescind it *in toto ;* it was not in its power to rescind it so far as it imposed an obligation upon the bank, and affirm the transaction so far as it operated to its advantage.

The bank has never repudiated the authority of Brown to enter into this contract; all that has been done has been in

affirmance of it. The bank defended Hanmer in the suit brought to foreclose the Seymour mortgage, and after decree against him, removed the case to the Supreme Court. A disaffirmance now, after Hanmer's money, obtained by means of it, has been retained for a period sufficiently long for the statute of limitations to run against his demand, could not be justified on any legal principle.

It does not become necessary to consider in this case whether the general power of the cashier to apply the assets of the bank in payment of its indebtedness, would include also a power to guarantee their collection or availability. The contract actually given in this case must be held to be affirmed by the subsequent acquiescence of the corporation, and to be now binding upon it.—*Episcopal Charitable Society v. Episcopal Church*, 1 *Pick.* 372; *Hayward v. Pilgrim Society,* 21 *Id.* 270; *Randall v. Van Vechten*, 19 *Johns.* 60.

In our view there is no error in the record of which the bank can complain, and the judgment must be affirmed, with costs.

The other Justices concurred.