J. B. HERNDON ET AL. v. DURHAM AND SOUTHERN RAILROAD COMPANY.

(Filed 26 March, 1913.)

1. **Parol Contracts—Statute of Frauds—Pleadings—Evidence—Objections and Exceptions—Easements—Deeds and Conveyances —Prescription.**

A parol contract relating to land is voidable, and not void, and, when executed, not denied, and the statute of frauds not pleaded, and the evidence to prove it is not objected to, the statute requiring it to be in writing has no application.

2. **Deeds and Conveyances—Prescription—Railroads—Easements— Rights of Way—Parol Contracts—Statute of Frauds.**

Where for mutual considerations a railroad company in acquiring a right of way has entered into parol agreement with the owner to construct an underpass or cattle-run under its track for the use of the owner whose land lay on both sides of the railroad, and which has been fully executed, and subsequently the railroad company attempts to close up the runway, which plaintiff seeks to enjoin, the interest claimed by the plaintiff is an easement in the lands which cannot pass except by deed or prescription.

3. **Parol Contracts—License Over Lands of Another—Revocable at Will.**

Where a right is claimed in the land of another resting in parol, whether treated as an easement or a license, it must be established by deed or prescription; for it is held that a license of this character, though based upon a valuable consideration, can be withdrawn at will.

4. **Injunction—When Evidence Sufficient.**

Where the main purpose of an action is to obtain a permanent injunction, and the evidence raises serious question as to the existence of facts which make for plaintiff's right and sufficient to establish it, a preliminary restraining order will be continued to the hearing.

5. **Parol Contracts—Statute of Frauds—Frauds in the Procurement —Benefits Retained—Repudiation in Part—Equity.**

Where a contract concerning an easement in lands, required by the statute of frauds to be in writing, rests in parol, and it is shown that it was procured by fraud of the party seeking to avoid it, he will not be permitted to retain the advantage he has derived under it and repudiate the other part of his agreement.

6. **Same—Railroads—Easements—Principal and Agent—Ratification —Evidence—Injunction.**

The agent of a railroad company procured a deed to a right of way over the lands of the owner, and there was evidence tending to show, as a part of the consideration of the deed, that the parties had agreed by parol that the railroad should construct a siding on the lands and perpetually keep open an underpass or cattle-run under the track for the owner's convenience, and furnish wire to inclose a pasture for cattle along the right of way granted. The company furnished the wire, constructed the underpass, and subsequently attempts to fill up the underpass. In a suit seeking a permanent injunction, the defendant company pleads the statute of frauds and denies the authority of its agent to make the contract alleged. There was further evidence on plaintiff's behalf that he requested that the agreement be put in writing, was informed by the defendant's agent that it would be unnecessary, that the defendant would keep its agreement, and that, if otherwise, the laws of the State would compel it to do so, which the plaintiff, being without legal counsel, believed and acted on: *Held*, the compliance by the defendant with the terms of the parol agreement was evidence of ratification of the contract made by its agent; the plea of the statute of frauds, with the other circumstances of this case, was evidence of fraud in the procurement of the deed for the right of way, which if established would set it aside; and to preserve the *status quo* of the parties, a restraining order should be granted to the hearing.

7. **Railroads — Rights of Way — Deeds and Conveyances—Fraud— Cancellation—Equity—Condemnation—Measure of Damages.**

Where a railroad company has procured a deed for its right of way from the owner of the lands by fraud, the latter is entitled to have the deed canceled, in which case the former would be left to its right of condemnation, wherein it would have to pay for all damages, which, in this case, would include those

arising to the plaintiff in having his pasture divided by the roadbed, without means of passage by his cattle from one part of the plantation to the other.

CLARK, C. J., concurring.

APPEAL from *Carter, J.,* from an order signed at chambers, 1 March, 1913, from WAKE.

This is an action to restrain the defendant from closing a passway under its track, leading from one part of the plantation of the plaintiffs to another part.

The plaintiffs' affidavit, used in the application for a restraining order, states in substance that they are the owners of the land described, containing about 250 acres; that in the year 1904 or 1905 the defendant surveyed across said land for the purpose of locating its line, and applied to the plaintiffs for the purchase of a right of way, through G. E. Lemmons, its chief engineer and superintendent; that the plaintiffs agreed to sell, but demanded $400 therefor, stating as a reason for demanding so much, that the running of the railroad across their lands, splitting said lands open, and cutting their plantation in two, would be a great disadvantage, and that there would be great danger to their horses and other cattle in passing across said railroad track; that the said Lemmons said the price was excessive, but finally agreed that the said railroad company would give $10 an acre for the land actually occupied by said railroad right of way, and as a further consideration and inducement would construct a siding for the shipping of timber and other products from the farm, and would build an underpass or cattle-run under the track of said railroad for the use of the plaintiff, and would furnish wire to inclose their pasture, because the right of way traversed the said pasture; that plaintiff thereupon executed their deed for said right of way; that they told said Lemmons at the time that they wanted some instrument of writing going to show and binding said railway company that said company would carry out its part of said contract, that is, would build said siding and would construct said underpass and would allow the same to remain open for all time for the plaintiffs; that said Lemmons assured

them that any statement of this part of the agreement in writing was not necessary, and that the railway company would leave said underpass and would maintain the same for all time; that furthermore said Lemmons said that the railway company, after building said underpass, would not be able to close same, but that the law of North Carolina would cause said railway to keep said underpass open and would prevent forever said railway company closing up said underpass without the consent of plaintiffs; that plaintiff were not acquainted with the terms of the law, and relied upon the assurance and representations and statements of the said Lemmons, the official and agent of said railway company; that, relying upon the representations and assurances made by said Lemmons, the plaintiffs signed said deed conveying the right of way, and were paid the sum of $10 an acre, aggregating an amount slightly more than $100; that defendant railway company built its road through said land and constructed said siding and the underpass on said land and furnished the said pasture wire, as had been agreed upon, and the underpass has been used and is now used for the passing and repassing from one side of the farm to the other, and for the passage of horses and cattle there through; that the defendant is now threatening to close said passway.

A temporary restraining order was issued, and on the return day the defendant filed the affidavit of the vice president, stating that the defendant had acquired its right of way by the deed of the plaintiffs; that across this right of way acquired of the petitioners there is a drain over which defendant built a trestle, and the defendant has found it necessary, as a matter of safety and economy, to put a large pipe under said trestle to carry the water flowing under same and fill said trestle; that if the agreement was made by said Lemmons, he had no authority to do so; and that said agreement, if made, was void under the statute of frauds.

The defendant did not deny the making of the agreement, or its knowledge that it had been made, or that it had been fully performed.

His Honor continued the restraining order to the final hearing, and the defendant excepted and appealed.

HERNDON *v.* R. R.

*W. L. Foushee and Manning & Kitchin for plaintiffs.*
*Fuller & Reade for defendant.*

ALLEN, J.  A parol contract relating to land is not void, but
voidable, and we have held that, when executory, it may be
enforced if it is not denied and the statute is not pleaded, and
the evidence to prove it is not objected to (*Henry v. Hilliard,*
155 N. C., 378), and that, when executed, the plea of the stat-
ute of frauds is no longer applicable.  *Choat v. Wright,* 13
N. C., 289; *Hall v. Fisher,* 126 N. C., 208.

Upon the strength of these authorities, the ruling of his
Honor might be sustained upon the ground that the agreement
of the superintendent has been performed, but for the fact that
an easement, such as that claimed, cannot pass except by deed
or prescription, and as there is no deed for the cattle-way under
the track, and it has not been used long enough to confer the
right by prescription, the agreement as to the easement has not
been executed.

Treated as a license, the position of the plaintiffs is no
stronger.  The weight of authority seems to be in favor of the
proposition that a license based upon a valuable consideration
cannot be withdrawn at will, and certainly not without com-
pensation (*Ricker v. Kelly,* 10 Am. Dec., 40; *Rinch v. Kern,*
16 Am. Dec., 501; *Mumford v. Whitney,* 30 Am. Dec., 71, and
notes in annotated edition), but our Court has adopted the
view to the contrary.  *McCracken v, McCracken,* 88 N. C.,
272; *Kivett v. McKeithan,* 90 N. C., 107; *R. R. v. R. R.,* 104
N. C., 658.

We do not think, however, the plaintiffs are without remedy
upon the facts as they now appear, and "It is the rule with us
that in actions of this character, the main purpose of which is
to obtain a permanent injunction, if the evidence raises serious
question as to the existence of facts which make for plaintiff's
right and sufficient to establish it, a preliminary restraining
order will be continued to the hearing.  *Hyatt v. DeHart,* 140
N. C., 270; *Harrington v. Rawls,* 131 N. C., 39; *Whitaker v.
Hill,* 96 N. C., 2; *Marshall v. Commissioners,* 89 N. C., 103."
*Stancill v. Joyner,* 159 N. C., 617.

If the allegations of the plaintiffs are true, the contract for the purchase of the right of way was made by an agent of the defendant, and the consideration for the deed was the agreement to pay $10 an acre for the land occupied, to construct a siding on the land, to furnish wire for a pasture, and to keep open permanently a passway under its track to enable the plaintiff's cattle to pass from one part of their plantation to another part.

The defendant has accepted the deed based upon this agreement, and is now claiming under it, and there is evidence that it had knowledge of the agreement, and has ratified it, as otherwise it would not have performed it by furnishing wire, etc.

If so, the law will not permit the defendant to retain the benefit of the contract and repudiate its obligations. *Rudasill v. Falls,* 92 N. C., 226; *Brown v. Davis,* 109 N. C., 28; *Christian v. Yarborough,* 124 N. C., 76.

In *Rudasill v. Falls, supra,* the Court, quoting from several authorities, says: " 'The principal cannot of his own mere authority ratify a transaction in part and repudiate as to the rest,' is the language of *Mr. Justice Story* in section 250 of his work on Agency. 'He must either adopt the whole or none.' Another recent author lays down the same doctrine thus: 'A nullification must extend to the whole of a transaction.' So well established is this principle, that if a party is treated as an agent in respect to one part of a transaction, the whole is thereby ratified. From this maxim results a rule of universal application, that where a contract has been entered into by one man as agent of another, the person on whose behalf it has been made 'cannot take the benefit of it without bearing its burdens. The contract must be performed in its integrity.' Ewell's Evans' Agency, 70 (Ed. of 1789, p. 95). The rule rests upon sound reason and abundant authority. *Crawford v. Barkley,* 18 Ala., 270; *Hodnett v. Tatum,* 9 Ga., 270; *Bank v. Hanner,* 14 Mich., 208; *Coleman v. Itache,* 1 Ore., 115."

Again, if the agent exceeded his authority and the defendant had no knowledge of the agreement, there are facts alleged which, if true, are sufficient to justify the court in maintaining the *status quo* until the final determination of the action. The

plaintiffs allege that the agent made the agreement for the defendant, and that they demanded that it be reduced to writing; that the agent told them a writing was unnecessary, and that the defendant would leave said passway and would maintain it for all time; that said agent further represented that the laws of North Carolina would not permit the same to be closed; that they executed their deed relying upon these representations, and the defendant says the agent had no authority to make the agreement or the representations.

A promise is usually without the domain of the law unless it creates a contract, but if made, when there is no intention of performance, and for the purpose of inducing action by another, it is fraudulent, and may be made the ground of relief. *Hill v. Gettys,* 135 N. C., 375; *Bradley v. Elliott,* 146 N. C., 582.

In the *Hill case* the Court ordered the cancellation of a mortgage because of a fraudulent promise, and in the opinion quotes with approval the following excerpts from text-books and decisions: "The general rule in regard to promises is that they are without the domain of the law unless they create a contract, breach of which gives to the injured party simply a right of action for damages, and not a right to treat the other party as guilty of a fraud. But that proceeds upon the ground that to fail to perform a promise is no indication that there was fraud in the transaction. There may, however, have been fraud in it, and this fraud may have consisted in making a promise with intent not to perform it. To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made. A promise is a solemn affirmation of intention as a present fact. 1 Bigelow on Fraud, 484. (The author is discussing, of course, civil remedies.) 'When a promise is made with no intention of performing it, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense.' *Goodwin v. Horne,* 60 N. H., 485. 'The intent is always a question for the jury, and to determine whether the intent was fraudulent the jury have necessarily to look to the circum-

stances connected with the transaction or those immediately preceding or following it.' *Des Farges v. Pugh,* 93 N. C., 31; 53 Am. Rep., 446."

In the *Bradley case* there was an exchange of land, and the defendant agreed, as a part of the consideration, to erect two dwellings and outhouses on the land conveyed to the plaintiff, and failed to do so.

The issues submitted to the jury were answered in favor of the plaintiff, and in discussing the effect of the verdict the Court says: "If the jury should find, in addition to their findings on the first and second issues, that the defendant fraudulently induced plaintiffs to agree to the exchange by falsely representing and pretending that he would build two suitable dwellings and necessary outhouses on the tract of land, such finding would be an ample basis for the decree cancelling the entire transaction. . . . The subsequent acts and conduct of a party may be submitted to the jury as some evidence of his original intent and purpose, when they tend to indicate it."

When we consider the assurances of the agent to induce the plaintiffs not to insist upon reducing the agreement to writing, the representations made by him, and the fact that he had no authority to make any agreement or representation, if the allegation of the defendant is true, we are of opinion there is evidence of fraud, and that the defendant cannot retain the fruits of it.

If so, the plaintiffs would be entitled to a cancellation of their deed, and the defendant would have to resort to condemnation proceedings to acquire a right of way, and the right to the passway under the track, if reserved in the deeds, would likewise have been subject to condemnation, if necessary to insure the safety of its roadbed.

We have not discussed the interesting question presented by plaintiffs' counsel as to a right to cross the track of the defendant, arising by implication, as it is not necessary to do so as the case is now presented, but there is much respectable authority in support of their contention. Jones Easements, sec. 306; *Powell v. R. R.,* 215 Mo., 352; *Corea v. Hignorra,* 17 L. R. A. (N. S.), 1019; *Ritchey v. Welch,* 149 Ind., 217; *Uhl*

v. R. R., 47 W. Va., 59; *Fritz v. Tompkins,* 168 N. Y., 524; *R. R. v. Commissioners,* 162 Mass., 83; *Powers v. Heffernan,* 233 Ill., 603.

Upon a review of the whole case, we are of opinion that it was proper to continue the restraining order until the facts can be determined.

Affirmed.

CLARK, C. J., concurring: In a case like this, no express agreement, either oral or written, is required to sustain a claim for a pass under the railroad track through an embankment. If a railroad splits a farm open, whether it acquires its right of way by condemnation or by conveyance, the owner has a reservation, without express words, from necessity and by implication of law. Such passways are necessary to preserve the proper use and enjoyment of the land. The law presumes that a vendor did not intend to convey a portion of his land in such a way as to deprive himself of full use of the remainder. 23 A. and E., 14. In this case the vendor sold a strip of land, 1,440 feet long for $103, splitting the farm open. It is inconceivable that he did not retain a private way under the railroad where there was a fill which isolated the two sides of the farm, unless he understood that he would have the right to an underpass. Though no writing was taken, signed by the defendant, it could not have been contemplated that the defendant could compel the vendor to go miles around to reach the land on the other side of the railroad.

As there was already a farm road there by which the landowner could pass from one side of the farm to the other, when the fill was thrown up the right remained to have a gap left for the continuance of this farm way, without any written agreement, and in fact it was so left for years until this attempt to close it up. Indeed, Revisal, 2601, expressly provides that any railroad crossing a plantation road "shall make and keep in constant repair crossings" for any plantation road and other roads. This applies as much to underpasses where there is a fill, and to bridges overhead where there is a cut, as to a grade crossing. The statute is provided to prevent inconven-

ience to adjacent landowners in the use of their farm roads in the same way that the railroads are required to maintain crossings for public roads, highways, and farm roads. Revisal, 2566 (5), 2568, 2569.

Indeed, the policy of the law is not to abolish underpasses, but to favor them, or overhead bridges where there is a cut, and to abolish grade crossings. To this end the Corporation Commission is authorized to require, when they think proper, the lowering or raising of any track or highway. Revisal, 1097 (10). The whole subject of the duty of railroad companies to so construct their roads as not to interfere with the use of any public road or private way is fully discussed, with citation of authorities, in *R. R. v. Goldsboro,* 155 N. C., 360, 361. Besides this, Elliott Railroads, sec. 1138, says: "The rule, however, is that a deed to a railroad company does not constitute a waiver of a right of way to a private crossing, and the owner whose land has been severed into parcels may claim and enforce the right to a crossing, notwithstanding his unconditional instrument of conveyance."

"Where an agreement by the vendee to give a vendor a passway over other land forms a part of the consideration for the sale and conveyance of land, and the vendee is placed in possession of the land, and the vendor is placed in the use of the passway, the former will not be allowed to prevent the latter from using the passway upon the ground that the contract therefor was within the statute of frauds, as a court of equity will not allow the vendee to hold the land and refuse to pay for it." *Champion v. Monday,* 85 Kentucky, 32.

In *R. R. v. Commissioners,* 162 Mass., 81, where the vendor had conveyed a strip of land through his farm, without any reservation, to the railroad company, the Court held: "The law that if one conveys a part of his land in such form as to deprive himself of access to the remainder of it unless he goes across the land sold, he has a way, of necessity, over the portion granted, applies to conveyances to a railroad company by a warranty deed which says nothing about a right of way across the land conveyed. . . . And the fact that the railroad pro-

vided and maintained a farm crossing for him for many years indicates that a clause releasing damages was not understood to apply to his right of way."

It seems clear, therefore, that aside from the evidence tending to show an express agreement, the plaintiff had an implied right to retain the passway so that the communication between two sides of his farm should not be interrupted by the fill. That an interval under such fill was not impractical is shown by the fact that for many years the underpass continued. Further, it is in accordance with the policy of our law, as declared by repeated statutory enactments cited above, that the construction of a railroad shall not interfere with the use of highways, cartways, private ways, or other methods of communication. Not only existing roads and highways are not to be interfered with by fills or cuts, but even when the railroad track crosses a local road or highway or a farm way on a grade, the Corporation Commissioners have ample authority to require the railroad track to be raised or lowered so as to abolish grade crossings. Revisal, 1097 (10).

The Revisal, 3753, makes it an indictable offense for any railroad to "fail to make and keep in constant repair crossings to any plantation road thereupon. The whole subject of the duty of railroads in regard to these plantation roads which are crossed by their track is fully discussed in *Goforth v. R. R.,* 144 N. C., 571, and we need not repeat what is there said.