CLARK, C. J., concurring.
This is an action to restrain the defendant from closing a passway under its track, leading from one part of the plantation of the plaintiffs to another part.
The plaintiffs' affidavit, used in the application for a restraining order, states in substance that they are the owners of the land described, containing about 250 acres; that in the year 1904 or 1905 the defendant surveyed across said land for the purpose of locating its line, and applied to the plaintiffs for the purchase of a right of way, through G. E. Lemmons, its chief engineer and superintendent; that the plaintiffs agreed to sell, but demanded $400 therefor, stating as a reason for demanding so much, that the running of the railroad across their lands, splitting said lands open, and cutting their plantation in two, would be a great disadvantage, and that there would be great danger to their horses and other cattle in passing across said railroad track; that the said Lemmons said the price was excessive, but finally agreed that the said railroad company would give $10 an acre for the land actually occupied by said railroad right of way, and as a further consideration and inducement would construct a siding for the shipping of timber and other products from the farm, and would build an underpass or cattle-run under the track of said railroad for the use of the plaintiff, and would furnish wire to inclose their pasture, because the right of way traversed the said pasture; that plaintiffs thereupon executed their deed for said right of way; that they told said Lemmons at the time that they wanted some instrument of writing going to show and binding said railway company that said company would carry out its part of said contract, that is, would build said siding and would construct said underpass and would allow the same to remain open for all time for the plaintiffs; that said Lemmons assured them that any statement of this part of the agreement in writing was not necessary, and that the railway company would (653) leave said underpass and would maintain the same for all time; that furthermore said Lemmons said that the railway company, after building said underpass, would not be able to close same, but that the law of North Carolina would cause said railway to keep said underpass open and would prevent forever said railway company closing up said underpass without the consent of plaintiffs; that plaintiffs were not acquainted with the terms of the law, and relied upon the assurance and representations and statements of the said Lemmons, the official and agent of said railway company; that, relying upon the representations and assurances made by said Lemmons, the plaintiffs signed said deed conveying the right of way, and were paid the sum of $10 an acre, aggregating an amount slightly more than $100; that defendant railway company built its road through said land and constructed said siding *Page 531 
and the underpass on said land and furnished the said pasture wire, as had been agreed upon, and the underpass has been used and is now used for the passing and repassing from one side of the farm to the other, and for the passage of horses and cattle there through; that the defendant is now threatening to close said passageway.
A temporary restraining order was issued, and on the return day the defendant filed the affidavit of the vice-president, stating that the defendant had acquired its right of way by the deed of the plaintiffs; that across this right of way acquired of the petitioners there is a drain over which defendant built a trestle, and the defendant has found it necessary, as a matter of safety and economy, to put a large pipe under said trestle to carry the water flowing under same and fill said trestle; that if the agreement was made by said Lemmons, he had no authority to do so; and that said agreement, if made, was void under the statute of frauds.
The defendant did not deny the making of the agreement or its knowledge that it had been made, or that it had been fully performed.
His Honor continued the restraining order to the final hearing, and the defendant excepted and appealed.
A parol contract relating to land is not void, but voidable, and we have held that, when executory, it may (654) be enforced if it is not denied that the statute is not pleaded, and the evidence to prove it is not objected to (Henry v.Hilliard, 155 N.C. 378), and that, when executed, the plea of the statute of frauds is no longer applicable. Choat v. Wright, 13 N.C. 289; Hall v.Fisher, 126 N.C. 208.
Upon the strength of these authorities, the ruling of his Honor might be sustained upon the ground that the agreement of the superintendent has been performed, but for the fact that an easement, such as that claimed, cannot pass except by deed or prescription, and as there is no deed for the cattle-way under the track, and it has not been used long enough to confer the right by prescription, the agreement as to the easement has not been executed.
Treated as a license, the position of the plaintiffs is no stronger. The weight of authority seems to be in favor of the proposition that a license based upon a valuable consideration cannot be withdrawn at will, and certainly not without compensation (Ricker v. Kelly, 10 Am. Dec., 40; Rinchv. Kern, 16 Am. Dec., 501; Mum ford v. Whitney, 30 Am. Dec., 71, and notes in annotated edition), but our Court has adopted the *Page 532 
view to the contrary. McCracken v. McCracken, 88 N.C. 272; Kivett v.McKeithan, 90 N.C. 107; R. R. v. R. R., 104 N.C. 658.
We do not think, however, the plaintiffs are without remedy upon the facts as they now appear, and "It is the rule with us that in actions of this character, the main purpose of which is to obtain a permanent injunction, if the evidence raises serious question as to the existence of facts which make for plaintiff's right and sufficient to establish it, a preliminary restraining order will be continued to the hearing. Hyatt v.DeHart, 140 N.C. 270; Harrington v. Rawls, 131 N.C. 39; Whitaker v.Hill, 96 N.C. 2; Marshall v. Commissioners, 89 N.C. 103." Stancill v.Joyner, 159 N.C. 617.
If the allegations of the plaintiffs are true, the contract for (655) the purchase of the right of way made by an agent of the defendant, and the consideration for the deed was the agreement to pay $10 an acre for the land occupied, to construct a siding on the land, to furnish wire for a pasture, and to keep open permanently a passway under its track to enable the plaintiff's cattle to pass from one part of their plantation to another part.
The defendant has accepted the deed based upon this agreement, and is now claiming under it, and there is evidence that it had knowledge of the agreement, and has ratified it, as otherwise it would not have performed it by furnishing wire, etc.
If so, the law will not permit the defendant to retain the benefit of the contract and repudiate its obligations. Rudasill v. Falls, 92 N.C. 226;Brown v. Davis, 109 N.C. 28; Christian v. Yarborough, 124 N.C. 76.
In Rudasill v. Falls, supra, the Court, quoting from several authorities, says: " `The principal cannot of his own mere authority ratify a transaction in part and repudiate as to the rest,' is the language of Mr.Justice Story in section 250 of his work on Agency. `He must either adopt the whole or none.' Another recent author lays down the same doctrine thus: `A nullification must extend to the whole of a transaction.' So well established is this principle, that if a party is treated as an agent in respect to one part of a transaction, the whole is thereby ratified. From this maxim results a rule of universal application, that where a contract has been entered into by one man as agent of another, the person on whose behalf it has been made `cannot take the benefit of it without bearing its burdens. The contract must be performed in its integrity.' Ewell's Evans' Agency, 70 (Ed. 1889), p. 95). The rule rests upon sound reason and abundant authority. Crawford v. Barkley, 18 Ala. 270; Hodnett v. Tatum,9 Ga. 270; Bank v. Hanner, 14 Mich. 208; Coleman v. Itache, 1 Ore., 115.' *Page 533 
Again, if the agent exceeded his authority and the defendant had no knowledge of the agreement, there are facts alleged which, if true, are sufficient to justify the court in maintaining thestatus quo until the final determination of the action. The plaintiffs alleged that the agent made the agreement for the defendant, and that they demanded that it be reduced to writing; that the agent told them a writing was unnecessary, (656) and that the defendant would leave said passway and would maintain it for all time; that said agent further represented that the law of North Carolina would not permit the same to be closed; that they executed their deed relying upon these representations, and the defendant says the agent had no authority to make the agreement or the representations.
A promise is usually without the domain of the law unless it creates a contract, but if made, when there is no intention of performance, and for the purpose of inducing action by another, it is fraudulent, and may be made the ground of relief. Hill v. Gettys, 135 N.C. 375; Braddy v.Elliott, 146 N.C. 582.
In the Hill case the Court ordered the cancellation of a mortgage because of a fraudulent promise, and in the opinion quotes with approval the following excerpts from text-books and decisions: "The general rule in regard to promises is that they are without the domain of the law unless they create a contract, breach of which gives to the injured party simply a right of action for damages, and not a right to treat the other party as guilty of a fraud. But that proceeds upon the ground that to fail to perform a promise is no indication that there was fraud in the transaction. There may, however, have been fraud in it, and this fraud may have consisted in making a promise with intent not to perform it. To profess an intent to do or not to do, when the party intends the contrary, is as clear a case of misrepresentation and of fraud as could be made. A promise is a solemn affirmation of intention as a present fact. 1 Bigelow on Fraud, 484. (The author is discussing, of course, civil remedies.) `When a promise is made with no intention of performing it, and for the very purpose of accomplishing a fraud, it is a most apt and effectual means to that end, and the victim has a remedy by action or defense.' Goodwin v. Horne,60 N. H., 485. `The intent is always a question for the jury, and to determine whether the intent was fraudulent the jury have necessarily to look to the circumstances connected with the transaction or those immediately preceding or following it.' Des Farges v. Pugh, 93 N.C. 31; 53 Am. Rep., 446." (657)
In the Braddy case there was an exchange of land, and the defendant agreed, as a part of the consideration, to erect two dwellings and outhouses on the land conveyed to the plaintiff, and failed to do so. *Page 534 
The issues submitted to the jury were answered in favor of the plaintiff, and in discussing the effect of the verdict the Court says: "If the jury should find, in addition to their findings on the first and second issues, that the defendant fraudulently induced plaintiffs to agree to the exchange by falsely representing and pretending that he would build two suitable dwellings and necessary outhouses on the tract of land, such finding would be an ample basis for the decree canceling the entire transaction. . . . The subsequent acts and conduct of a party may be submitted to the jury as some evidence of his original intent and purpose, when they tend to indicate it."
When we consider the assurances of the agent to induce the plaintiffs not to insist upon reducing the agreement to writing, the representations made by him, and the fact that he had no authority to make any agreement or representation, if the allegation of the defendant is true, we are of opinion there is evidence of fraud, and that the defendant cannot retain the fruits of it.
If so, the plaintiffs would be entitled to a cancellation of their deed, and the defendant would have to resort to condemnation proceedings to acquire a right of way, and the right to the passway under the track, if reserved in the deeds, would likewise have been subject to condemnation, if necessary to insure the safety of its roadbed.
We have not discussed the interesting question presented by plaintiff's counsel as to a right to cross the track of the defendant, arising by implication, as it is not necessary to do so as the case is now presented, but there is much respectable authority in support of their contention. Jones Easements, sec. 306; Powell v. R. R., 215 Mo., 352; Corea v. Hignorra, 17 L.R.A. (N.S.), 1019; Ritchey v. Welch, 149 Ind. 217; Uhl v. R. R., 47 W. Va. 59; Fritz v. Tompkins, 168 N.Y. 524; (658) R. R. v. Commissioners, 162 Mass. 83; Powers v. Hefferman, 233 Ill. 603.
Upon a review of the whole case, we are of opinion that it was proper to continue the restraining order until the facts can be determined.
Affirmed.