G. W. McCRACKEN v. J. M. McCRACKEN.

*Parol contract of Purchase, damages not recoverable for breach of—Respective rights of Parties.*

1. An action for damages for the non-performance of a parol contract for the purchase of land cannot be sustained.
2. A vendee under such a contract, who makes improvement upon the land, cannot maintain an action for their value against the vendor, provided the latter makes no use of them, and is willing that they may be removed.

McCracken v. McCracken.

All that the court can do, in such case, is to see that the vendor shall derive no unconscionable advantage from his manner of dealing with the vendee.

(Chief-Justice Smith dissenting.)

(*Chambers* v. *Massey*, 7 Ired. Eq., 286; *Dunn* v. *Moore*, 3 Ired. Eq., 364; *Sain* v. *Dulin*, 6 Jones' Eq., 195; *Carter* v. *Page*, 4 Ired., 424; *Bridgers* v. *Purcell*, 1 Dev. & Bat., 492; *Albea* v. *Griffin*, 2 Dev. & Bat. Eq., 9, cited and commented on).

Civil Action tried at Fall Term, 1882, of Haywood Superior Court, before *Shepherd, J.*

The court here considered only one of the many exceptions taken for the defendant, and the facts necessary to present it are as follows:

In his complaint as originally drawn and first amended, the plaintiff alleges that in 1872 the defendant was the owner of a tract of land situate in Haywood county and on Crabtree creek, whereon there was a valuable mill-site and convenient water-power, which he was anxious to have improved; that with this view he made certain propositions to the plaintiff, which, after consideration, were accepted by him, and thereupon the two concluded a parol agreement to the effect that the plaintiff should erect a mill upon the premises and dig a race, and in consideration of his so doing the defendant should convey to him the said mill-seat, the race privilege, and a sufficient lot of ground for a log-way about the saw-mill; that in pursuance of said agreement the plaintiff proceeded to erect, and did erect both grist and saw-mills at the place, and dug the race as agreed on, and continued to use and occupy the same from that time up to 1879, when he had written notice given him by the defendant, requiring him to remove his mills and quit the place; that in his conduct in the matter the defendant had been actuated by a purpose to overreach and defraud the plaintiff, and had caused him to sustain a loss of fully one thousand dollars.

The prayer of the complaint is, that the defendant may be required to convey the property and its appurtenances to the plaintiff, according to the terms of the agreement; or if not, that

35

the plaintiff recover of him the sum of one thousand dollars for the losses sustained.

By his answer the defendant denies that there was ever any agreement or contract between the parties in relation to the land, but that on the contrary the plaintiff entered upon it in his own wrong and built the mills and dug the race without authority, and without any sort of understanding with the defendant that he was to have the title; that after having enjoyed the use of the premises for several years without paying or offering to pay rent for the same, the plaintiff proposed to buy it of the defendant and offered fifty dollars therefor, which the latter declined to accept because he considered it far below its real value, and that this offer is the only proposition that ever passed between the parties looking to a sale by the one and a purchase by the other of the property; that finding that the digging of the race and the flow of water through it was productive of great damage to his adjoining lands, under cultivation, the defendant gave the plaintiff notice in 1879 to remove his mills and machinery from his premises, and this he was still willing he should do, and asks the court to require him to do. He also alleges that he has been endamaged by the race and by the use and occupation of his lands to the amount of one thousand dollars, for which he asks judgment against the plaintiff.

At the trial, the plaintiff offered evidence to establish the parol agreement between the defendant and himself, as set out in his complaint, and that in pursuance thereof he had entered upon the land, built the mill, and dug the race with the defendant's knowledge and consent. He also offered the evidence with a view to show that the defendant had given the plaintiff a license to enter and occupy the premises, and that the effect of such license was to induce him to expend his money in building the mill and cutting the race.

This evidence was objected to by the defendant but admitted by the court, not (as is stated in the case) for the purpose of proving a contract by parol for the conveyance of land or any

interest therein, but to show how the plaintiff had been induced to enter upon and improve the defendant's land; and in order to make the proofs and allegations correspond, the court gave the plaintiff leave to amend his complaint, so as to charge that his entry upon the land, the digging of the race, and building the mills, were all done under a license from the defendant, and that afterwards he had given the plaintiff notice to remove the mills and machinery from the land, and forbidden him any longer to use and occupy the same until removed.

Under the complaint, so amended, issues were submitted and responded to as follows:

1. Were the improvements put upon the land with the knowledge and permission of the defendant?   Yes.

2. Was the plaintiff notified by defendant to quit the premises, and did he, in consequence of such notice, quit the same before bringing his action?   Yes.

3. What is the value of the permanent improvements which the plaintiff put upon the land?   $150.

After judgment against him according to the verdict, the defendant appealed.

*Mr. J. H. Merrimon,* for plaintiff.
*Mr. G. A. Shuford,* for defendant.

RUFFIN, J.   In consideration of the decisions made in *Chambers* v. *Massey,* 7 Ired. Eq., 286; *Dunn* v. *Moore,* 3 Ired. Eq., 364; and *Sain* v. *Dulin,* 6 Jones' Eq., 195, it may well be doubted whether the court can grant any relief, even so far as to give the purchaser compensation for his improvements, under a parol contract for the purchase of land, the terms of which are denied or disputed by the defendant in his answer.   These cases all go to the length of saying, that if, in an action brought to enforce the specific performance of such a contract, or in the alternative for compensation for improvements put upon the land, the answer should deny that there was any contract, or

allege that its terms differed from those set out in the complaint, then the court could grant neither relief, because the statute forbids its going into proof to establish for any purpose whatsoever, a contract variant from the one admitted in the answer; and if upon that the plaintiff could get no relief, he could not get it at all.

These cases seem to have been well considered, and much pains taken in them to make known their reasons and to show wherein they differed from other decisions (and it is not to be denied that there are others) which seemed to be opposed to them. It would, therefore, require a most convincing argument to induce me, speaking for myself alone, to depart from principles so maturely considered and so clearly enunciated, and especially as they seem to be in strict keeping with the wise policy of the statute of frauds, in that, they close the door upon temptations to commit perjuries, and the assertion of feigned titles to property. It is not necessary, however, that we should now go to the full length of those decisions, as we conceive a much less stringent rule, and one sanctioned by all the authorities, is sufficient to preclude this plaintiff from the recovery he is seeking to make.

In *Albea* v. *Griffin*, 2 Dev. & Bat. Eq., 9, which is so often referred to as the leading case on the subject, the right of a purchaser under a parol contract to have compensation for improvements, made under an honest expectation that the land would be his, was put expressly upon the ground that it would be against conscience to allow the owner under such circumstances to acquire and enjoy the fruits of another's labor, or the expenditure of another's money, and thus enrich himself to the injury of that other. But neither in that case nor in any other in which its principles have been adopted—and there are many such—is there even a suggestion to be found, that an action can be sustained in any form, or in any court, whether at law or in equity, for damages for the non-performance of such a contract; and that is simply what this action is, nothing more nor less. To permit it

to be done, would be for the courts. to act in the very teeth of the statute, in defiance of the declared will of the legislature.

Wherein could consist the difference between a direct enforcement of the contract, in such a case, and the court's saying to the owner, we cannot compel you to part with your property, but should you undertake to exercise ownership over it, we will mulct you with damages? The most they can do, and all they have ever undertaken to do, is to say to him that if he repudiates the contract he must be content with the taking back what was his own, and at its own intrinsic value, unenhanced at the cost or by the labor of another.

But what sort of connection is there between that principle and this case, in which the defendant is not only content with being restored to what was his own, but invites the plaintiff to take what is his (buildings, machinery and all), and craves the aid of the court in compelling him to do so.

If we consider the contract between the parties as a *license* given to the plaintiff to enter upon the land, and erect and enjoy the improvements, we cannot perceive that it in the least serves to help his case. If purely a license, it excused, it is true, his entry upon the land which would otherwise have been a trespass; but it was still revocable, and its continuance entirely dependent upon the will of the owner. If intended to pass a more permanent and continuing right in the land, whereby the authority or estate of the owner could be in the least impaired, it was then not only necessary to be evidenced by writing, but could only be made effectual by *deed*. In Hilliard on Vendors, 124, it is said that a license which grants an estate, however short, requires a deed; and in 3 Kent, 352, the doctrine is thus stated: "A claim for an easement must be founded upon a grant or upon a presumption which supposes one, for it is a permanent interest in another's land, with a right to enter and enjoy the same"; and to the same effect are the decisions in this court in *Bridgers* v. *Purcell*, 1 Dev. & Bat., 492, and *Carter* v. *Page*, 4 Ired., 424.

In any point of view that can be taken of the case, this court thinks the plaintiff must fail in his action.

Having made a contract such as the law discourages from considerations of public convenience, he must abide the consequences; and as the defendant disclaims a purpose to appropriate what is his (the plaintiff's), he must be content with getting that back without compensation for any loss he may have sustained.

The judgment of the court below is, therefore, declared to be erroneous, and the same is reversed, and judgment will be entered here that the defendant will go without day.

SMITH, C. J., *dissenting.* While concurring in the disposition made of the appeal, some of the reasons assigned in the opinion for the judgment rendered are so much in opposition to my own convictions and impressions as to what the law ought to be, and under our adjudications, is, that I feel constrained to give utterance to my own views on the subject, lest my silence should be construed into an approval.

The proposition enunciated is, that in a bill for the specific performance of an unwritten contract for the sale of land, resisted under the act of 1819 (Bat. Rev., ch. 50, § 10), not only will not performance be decreed, but the action will be dismissed and no compensation allowed for improvements, unless the existence and terms of the contract, as set out in the bill, are admitted in the answer. If on the other hand the admission is made and the aid of the statute claimed at the same time, an account will be ordered and compensation allowed for the increased value imparted to the land, the subject matter of the agreement, by improvements put upon it by the vendee in good faith, and before notice of the vendor's intention to repudiate it; and this, upon the ground that no parol evidence can be heard to establish the agreement. Thus, by refusing to acknowledge the contract or varying its provisions, the defendant is enabled to escape the obligation of accounting for the increase in value

of the property, produced by the labor and expenditure of the vendee, which his own conduct has invited, and to retain the results free from responsibility to any one. The injustice and wrong, thus in the power of the vendor to perpetrate upon the confidence reposed in his fidelity to an engagement, resting for support on his integrity and good faith alone, would seem to be a sufficient refutation of a doctrine followed by such possible consequences; besides which it invites the defendant, under the strong incentive of interest, to make the denial when compelled to answer the allegation, and commit the fraud and perjury which it was one of the chief objects of the enactment to suppress.

In my own opinion, and upon an examination of the authorities in our own state, this is not a correct statement of the rule which prevailed in the separate courts of equity under the former system, nor ought to be upheld and acted on in a single tribunal invested with the functions and powers heretofore exercised in a divided jurisdiction.

The courts in England and many of the states hold, that when a parol contract has been in part performed in some substantial particular and accepted by the vendee, as in case of betterments put upon land, so that full redress could not be had, after repudiation, by a suit at law, it takes the case out of the statute, and performance will be enforced; and this rule is adopted because, in the language of Chief-Justice. STORY, "otherwise one party would be enabled to practice a fraud upon the other." Story Eq. Jur., § 759. We disown the doctrine of part performance, and concede the absolute nullity of the contract at the election of the party to be charged for all purposes, and refuse to recognize it as having any force unless put in writing; but while not decreeing execution, we, for the same reason, will not allow a defendant under such circumstances to appropriate to his own use the fruits of another's labor and expenditure, induced by his holding out the expectation to the person making them, that he was

to have the property improved on payment without accountability therefor.

It may be said that it was the vendee's own folly to rely on an oral promise which he knew could not be enforced, and perhaps it was folly in him to depend upon the personal integrity of the vendor, but it would be a gross and inexcusable fraud to permit the latter to take advantage of misplaced confidence, and secure to himself the fruits of another's outlay in money and work, without making any compensation.

The cases relied on in the opinion do seem to refuse all relief, where the defendant denies, and the plaintiff would have to resort to parol proof of, the contract; and they can only be reconciled with numerous others looking in contrary direction by interpreting the words of the court, as having reference to the *obligation of the contract*, and intended to charge the defendant upon it as such. In this sense the rulings are consistent and free from difficulty. But none of them controvert the plaintiff's right to recover, in a court of law, whatever money may have been paid in furtherance of the contract on his own part, and to do this he is required to show the circumstances under which the moneys were paid, among them the most material being the parol contract and the defendant's repudiation of it, as constituting his cause of action. But this, as well as the claim for improvements, must now be entertained in the same court, and as incidental to and part of a suit for specific performance, when the latter redress is inadmissible. The evidence is not offered to show a contract, possessing any legal force, as this would be in direct disregard of the statute, for the plaintiff's equity springs out of the nullity of the parol promise, which the defendant may set aside or abide by, and, if he does set it aside, requires him to restore what he received under it while he recognized its binding force.

I see no reason for excluding the claim for improvements.

I find it difficult to understand how the mere acknowledgment of an unwritten and void contract, in opposition to the

statute, can fix upon the defendant a liability which full proof after denial cannot, or how any effect can be ascribed to it, when the statute is set up; for the acknowledgment is only of a void contract, and can impart no legal efficacy to it. It is not the less invalid because of such admission.

In this connection, a brief reference to former adjudications on the subject becomes necessary.

In *Ellis* v. *Ellis* it was first held that the vendor should perform his parol contract. 1 Dev. Eq., 180. Upon the rehearing the decree was reversed "so far as it ordered the execution of the contract." *Ibid*, 341. It was again before the court upon a motion for further directions, and it was decided that inasmuch as full redress was not attainable by an action at law, the plaintiff's "plain equity" is to have a suit on a bond, transferred in part payment, instituted by defendant, stayed, a restoration of the money less the value of the mesne profits recovered by defendant, and an entry of satisfaction of his judgment at law against the plaintiff. A decree to this effect was entered. *Ibid*, 398. In this case the answer set up the defence under the act of 1819.

In *Baker* v. *Carson*, 1 Dev. & Bat. Eq., 381, the defendant, having a life estate in the land with remainder in fee to her two daughters, one of whom and her husband were the plaintiffs, to induce them to settle near her, said to him, the land was in a great measure uncleared, and that upon a division between the remaindermen, and the plaintiffs moving upon the share assigned to them and settling there, she would release to the *feme* plaintiff her life estate therein. This was done, and the land greatly improved during the plaintiff's several years residence thereon, when, upon disagreement, the defendant sued to recover possession of the premises. The defendant pleaded the act of 1819, avoiding parol contracts for the sale of land.

Delivering the opinion, the learned Chief-Justice says: "So far as the bill seeks this relief (specific performance) it must be dismissed. The alleged agreement is by parol, and the defendant insists on the act of 1819, which declares all such parol

agreements void in law and in equity. But the bill asks for relief of a different kind. It prays that the defendant may be enjoined from turning the plaintiff, John, out of possession, unless she will make him a reasonable allowance for the valuable improvements he has put upon the land. This claim is not founded upon the supposed existence of any *contract* of which it seeks execution, or for the breach of which it asks compensation or damages. It is an appeal to the court to *prevent fraud.*" In concluding the opinion he adds: "To enable us to ascertain what is just between the parties, let the clerk and master of Pitt inquire and report the *additional value conferred on the defendant's life estate in this land by means of the plaintiff's labor and expenditures thereon*" (the italics are our own), and also the reasonable value of the use of the land since the 1st day of January, 1831, when possession was required to be surrendered.

In this ruling GASTON, J., concurs, but DANIEL, J., dissents, upon the ground that full compensation can be obtained in an action at law.

In *Albea* v. *Griffin*, 2 Dev. & Bat. Eq., 9, the defendant's ancestor contracted by parol to convey the land to the plaintiff for goods which were partly delivered, and put the defendant, after a survey, in possession. The plaintiff erected a house on the premises, in raising which the vendor gave him assistance. The action was against the defendants, the heirs-at-law, for a specific performance, and the defence was that the agreement was not in writing. GASTON, J., admitting the statutory obstruction in the way of an enforcement of the obligation, says: "But we are nevertheless of opinion that the plaintiff *has an equity which entitles him to relief, and that parol evidence is admissible for the purpose of showing that equity.* The plaintiff's labor and money have been expended in improving property, which the ancestor of the defendants encouraged him to expect should become his own, and by the act of God, or by the caprice of the defendants, this expectation has been frustrated. The consequence is a loss to him and a gain to them. *It is against conscience that they*

*should be enriched by gains thus acquired to his injury.* If they repudiate the contract, which they have a right to do, they must not take the improved property from the plaintiff, *without compensation for the additional value which these improvements have conferred upon the property.*" A reference was accordingly ordered to ascertain the additional value imparted by the improvements, and for an account.

In *Smith* v. *Smith*, 1 Ired. Eq., 83, a written memorandum of the agreement was alleged but not proved, and a demand for compensation was refused, because not warranted by the case in the pleadings, DANIEL, J., remarking: "If the plaintiff can make any case at law, either for damages or for compensation, this decree will not stand in his way."

In *Dunn* v. *Moore*, 3 Ired. Eq., 364, it is decided that when the contract is denied and the statute insisted on, there can be no relief; but that if the defendant had admitted the contract, and that he had put the plaintiff in possession, he would be entitled to relief, "not that this court could in a case of this kind give the plaintiff anything by the way of damages for *the violation of a contract,* but because the defendant, after making the contract and putting the plaintiff into possession, ought not to be allowed to put him out without returning the money he had received and compensating him for his improvements."

It will be observed that the equity arises out of a contract which has induced the outlay and expenditure, and its enforcement is made to depend upon the defendant's admission of the fact, and will be denied, if to be proved in any other way—thus placing the remedy entirely in the hands of the defendant to allow or to refuse, and yet the statute is as effectual a barrier where the contract is admitted and the statute relied on, as when the contract is denied.

In *Chambers* v. *Massey*, 7 Ired. Eq., 286, a parol contract of sale at the price stated, the letting the plaintiff into possession, and the receiving in part payment a mare valued at $50, was admitted in the answer as charged in the bill, but the other terms

of the agreement set out were denied, and the statute was relied on. The specific performance was refused and would have been the alternative relief, if there had been full redress in a court of law; but as a part of the consideration paid was a claim against one John N. McGee, which the defendant had converted into a bond of McGee payable to himself, Ruffin, C. J., declared that a court of equity would take cognizance of the cause, and that the plaintiff's equity was to have the bond, and be reimbursed the value of the mare received by the defendant towards the purchase money, "and *also the value of the permanent improvements made by him on the premises,* before filing the bill, or before he was informed, at any time prior to the filing of the bill, that the defendant would not convey the premises to him under the contract."

The case of *Thomas* v. *Kyles,* 1 Jones' Eq., 302, was to set up a deed of gift for land, which the donor had got into his possession and destroyed, and, it would seem from an imperfect statement, for a conveyance of a small piece of land besides. Battle, J., in relation to this tract of five acres, says the contract for its purchase "*was never reduced to writing and is not admitted in the answer.* It cannot, therefore, be specifically enforced, even though partly executed, but the *plaintiff is entitled to an account for the substantial improvements put upon the land by her father.*"

In *Love* v. *Neilson, Ibid,* 339, the defence under the act of 1819, that the contract was not in writing, was set up in a plea in bar, and while denying a decree of conveyance of the land, the court say, Battle, J., delivering the opinion: "But upon the authority of *Baker* v. *Carson,* 1 Dev. & Bat. Eq., 381, and *Albea* v. *Griffin,* 2 Dev. & Bat. Eq., 9, we think that the plaintiff is entitled in this court to be paid for the improvements which, under his contract with the defendant, he, by his work and labor, put upon the defendant's land. As to obtain this, he is entitled to an answer from the defendant, and, as the answer

cannot be filed in this court, the cause must be removed to the court below for that purpose."

In *Murdock* v. *Anderson*, 4 Jones' Eq., 77, the plaintiff was left to pursue his remedy at law for the money paid, and in *Capps* v. *Holt*, 5 Jones' Eq., 153, the jurisdiction was entertained because the defendant in his answer offered "to account with the plaintiff fairly."

In *Hinton* v. *Fort*, 5 Jones' Eq., 251, PEARSON, C. J., uses this language, the statute of frauds being relied on: "As the contract was not reduced to writing, the plaintiff is not entitled to specific performance, but as the repairs and improvements were made with the knowledge and concurrence of the defendant, he cannot in conscience take the benefit and refuse to make a proper allowance for the expenditure, unless the plaintiff has violated and refused to abide by and perform some essential part of the contract," &c.

The case most strong against the granting of any relief, unless the contract is admitted by the defendant, is that of *Sain* v. *Dulin*, 6 Jones' Eq., 195, and it must be conceded to be irreconcilable with some of the previous adjudications, two of which are summarily put out of the way in the opinion of BATTLE, J., who says: "Were the contract, which he (the plaintiff) states, admitted by the defendant, but repudiated because of its being by parol, his claim for compensation on account of the value which he added to the land by his improvements would be clear, has long since been settled by the leading case of *Albea* v. *Griffin*, 2 Dev. & Bat. Eq., 9. But the answer denies the contract as set out in the bill, and alleges one which he avers he was willing to have executed, had he not been prevented from doimg so by the misconduct of the plaintiff himself. Under these circumstances, the case of *Dunn* v. *Moore*, 3 Ired. Eq., 364, is a direct authority against the claim of the plaintiff to any relief at all." "If the contract be denied," he continues, "the court cannot grant any relief, because it cannot go into proof of a contract variant from that which is stated in the answer."

So far as relief is sought under the contract, as one possessing any binding force, the conclusion announced is incontrovertible, but I am unable to see upon what ground is shut out an inquiry into the circumstances, of which the contract may be one of the strongest, under which the plaintiff was induced to enter upon land and lay out his money, labor and time in its improvement, and which render it inequitable, if not a fraud, in the vendor to reap the fruits of the outlay made by the plaintiff. *Clancy* v. *Crone*, 2 Dev. Eq., 363.

This adjudication may grow out of a former ruling, to the effect that when the defendant in his answer admits a parol contract, such as was alleged in the bill, a party cannot avail himself of the statute, and that he was bound to answer, not only whether there was any' such agreement as charged by the plaintiff in writing, but whether there was such by parol, and its terms. Story Eq. Jur., §§ 756, 758, and numerous cases cited. But it is now well settled that if the defendant should, by his answer, admit the parol contract and insist on the benefit of the statute, he will be fully entitled to it notwithstanding such admission; but if he does not claim the protection of the statute, the contract will be enforced. Story Eq. Pl., § 763. Such is the rule recognized in this state. Will. Eq. Plead., 327.

As then the admission in the answer of a parol agreement, when the protection of the statute is invoked, gives no vitality whatever to it, and it remains void as if it did not exist, so far as any obligation is imposed upon the defendant, it is difficult for me to distinguish in principle the cases where the contract is denied and where it is admitted, as furnishing a just claim to remuneration for improvements made by the vendee.

But I think the fair conclusion to be drawn is, that in both cases, where the contract upon an admission or upon undoubted evidence fully appears, and by this means a party has been induced to enter upon and improve real estate upon a reasonable expectation of becoming its owner when paid for, the vendor, while he may repudiate his contract, must not appropriate the

fruits of the expenditure of another without compensation to him; and this, because a fraud would be thus perpetrated.

The evidence is competent, not to create an obligation, but to uncover and expose a fraud, which would be remediless unless it was allowed. Such, I think, is the general current of the rulings in this state.

Of course, any redress afforded under a divided general system may now be had in the same tribunal and in a single action.

Reluctant to disagree with my Associates of the court upon the proposition which has been discussed, and which was not necessary in deciding the cause, its practical and wide-reaching consequences have induced me to examine the authorities in our own state, and the investigation brings me to the result I have mentioned. Yet I approve the action of the court in its disposition of the cause.

PER CURIAM.                          Reversed.