(659) The Oxford and Henderson Railroad was chartered on 23 March, 1871. In August, 1881, it completed its track to a point in the town of Henderson, designated as "A" in the diagram, within a few feet of the right-of-way of the Raleigh and Gaston Railroad Company.
From the point "A" to the passenger depot of the Raleigh and Gaston Railroad Company the distance is about _____ feet. For the purpose of making a physical connection with this latter road the Oxford and Henderson Railroad Company, in 1881, through its lessee, A. H. A. Williams, entered upon the right-of-way of the Raleigh and Gaston Railroad Company, and was proceeding to lay its track longitudinally on the said right-of-way in the direction of the latter's passenger depot, when it was met by an opposing force of the Raleigh and Gaston Railroad Company which was building a track from the latter's passenger depot in the direction of the point "A." The Raleigh and Gaston Railroad Company forbade the lessee Williams from entering or further trespassing, as it alleged, upon its right-of-way. A breach of the peace between the two opposing forces being imminent, warrants were issued, at the instance of the Raleigh and Gaston Company, against Mr. Williams and some of his employees, under which they were arrested and bound over to court. The said lessee was not enjoined against further proceedings with his track but desisted, he says, in order to prevent bloodshed and the loss of life. That when the work was thus interrupted the said lessee had extended the track on the said right-of-way to a point marked "B" on the diagram, some feet from the point "A," and it is alleged that it continued in possession of the same until the present time. It does not distinctly appear to what extent this track was used, but it was never removed, and appears to have been in the possession and under the control of the said lessee.
In 1884 the lessee, Williams, extended his track along said right-of-way to the point "C" in the diagram, where it was joined to a short spur track of the Raleigh and Gaston Railroad Company, which led (660) to the latter's depot, and the whole extension from "A" to the said depot has been used ever since by the Oxford and Henderson road, both under the lessee Williams and his lessor, the R. and D. Railroad Company. This extension of the track from "B" to "C," and the use *Page 461 
of the track from "C" to the depot, was made and permitted under a parol agreement, the terms of which are seriously disputed by the contending parties.
The Raleigh and Gaston Company, on this point, alleges that subsequent to the extension of the track to "B" the Raleigh and Gaston Railroad Company (in 1884), finding that it suffered much delay of its trains stopping to transfer freight to the Oxford and Henderson Railroad Company, suggested to James A. White (the superintendent) that he could extend his track a short distance further, so five or six cars could be left alongside it by the Raleigh and Gaston Railroad Company.
The transfer of heavy goods could be easily facilitated, and complainants are informed and believed that the said extension was made to the point marked "C" by the Oxford and Henderson Railroad Company under this suggestion and with the acquiescence of the Raleigh and Gaston Railroad Company.
That subsequent to this John C. Winder suggested and proposed to said White, as plaintiffs are informed and believe, that if the Oxford and Henderson Railroad Company would agree to receive the cars of the Raleigh and Gaston Railroad Company on its track without transfer of freight, and would not require the Raleigh and Gaston Railroad Company to stop its passenger train at the depot of the Oxford and Henderson Railroad Company, as said company had a right to require under the statute of the State, that the Raleigh and Gaston Railroad Company would consent that the Oxford and Henderson Railroad Company could make a physical connection with its track near the Raleigh and Gaston Railroad depot, by joining the Oxford and (661) Henderson extension track to a short spurtrack which the Raleigh and Gaston Railroad Company had put in at that point, and this proposition was accepted and agreed to by the Oxford and Henderson Railroad Company, and the track was accordingly again extended and connected with the said spurtrack, and the physical junction of the two tracks completed.
The contention of the Raleigh and Gaston Railroad Company on this question is thus set out in its answer:
"Further answering these defendants say that in the spring of 1884 the said Williams, lessee of the Oxford and Henderson Railroad Company was allowed to extend his track over this land and to make a physical connection with the track of the Raleigh and Gaston Railroad Company, upon the express condition, stipulation and agreement that the entire track laid by him on the right-of-way of the Raleigh and Gaston Railroad Company should be taken up, the connection severed, and the right-of-way restored whenever the Raleigh and Gaston Railroad Company *Page 462 
should require this to be done, and that the said Williams expressly agreed to those provisions, and the track was accordingly extended and the connection made, the Raleigh and Gaston Railroad Company making no charge for the same."
The plaintiffs allege that the Raleigh and Gaston Railroad Company has threatened to tear up the whole of said track, by which they will be irreparably damaged, and they pray for a perpetual injunction. The alleged threat is contained in the following letter from John C. Winder, the general manager of the Raleigh and Gaston Railroad Company, to W. H. Green, general superintendent of the Richmond and Danville Railroad Company:
(662) "DEAR SIR: — I had hoped before this that you would have removed your track, now upon the right-of-way of the Raleigh and Gaston Railroad at Henderson, which I notified you some days ago had been condemned by the Durham and Northern Railway Company for its use. As nothing has yet been done towards the removal of your track, I write now to say that as the right-of-way is absolutely necessary for our use, if your track is not removed within the next ten days I will take it up and place your ties and rails at as convenient a place for you as it is possible for me to do."
The Durham and Northern Railway Company, mentioned in the foregoing letter, has had the right-of-way of the Raleigh and Gaston Railroad Company, over which the track of the plaintiffs is laid, condemned to its use as a part of its main line. No notice of the proceedings were served on the plaintiffs, and they allege that they were collusive and void.
The plaintiffs claim the right-of-way in question:
"1. By a continued possession for more than `two years' after the road has been `located,' which is the provision of the Western North Carolina charter, or two years after the road was `finished,' which is the provision of the North Carolina Railroad Company's charter, because the Oxford and Henderson Railroad Company has the same `privileges or immunities possessed or enjoyed by any other railroad in this State.'
"2. The plaintiff also claims the right to build this track to `join or unite with the Raleigh and Gaston track.'
"3. The plaintiff also claims by estoppel against the defendants, who acquiesced in the possession and gave consent to continue the track for its convenience and advantage."
(663) There were many affidavits read on both sides which were more or less conflicting, especially as to whether the extension of the track was permitted upon an agreement that it should be removed upon the request of the Raleigh and Gaston Railroad Company. *Page 463 
As the court has found it unnecessary to pass upon the affidavits, they are not essential to a proper understanding of the opinion.
His Honor below granted a restraining order, and it is for this order that the defendants appealed.
The first two grounds upon which the plaintiffs base their right to the location in question are, to use their own language, as follows:
1. "By a continued possession for more than two years after the road has been located, which is the provision of the Western N.C. Railroad charter, or two years after the road was finished, which is the provision of the N.C. Railroad charter; because the Oxford and Henderson Railroad Company has the same privileges or immunities possessed or enjoyed by any other railroad in this State.
2. "The plaintiff also claims the right to build this track to `join or unite with the Raleigh and Gaston Railroad track.'"
The Oxford and Henderson Railroad Company was chartered by the General Assembly of 1870-71. Its charter gave it power "to have land condemned for right-of-way according to existing laws." Under the existing laws there was no such statute of limitations as is relied upon by the plaintiffs. They must, therefore, in order to sustain their contention, connect themselves with the charters of the Western North (664) Carolina and the North Carolina Railroad companies.
These charters confer upon the said companies the right to enter upon any lands "for the purpose of constructing" their roads, "and, for want of agreement as to the value thereof or from any other cause, the same cannot be purchased from the owner or owners, the same may be taken at a valuation to be made by five commissioners," etc. If there be no agreement or purchase there shall be a presumption of a grant of an easement, "and in case the owner or owners shall not apply within two years next after" the road is finished over his or their lands, or in the case of the Western North Carolina Railroad Company, within two years after the road has been located, the owner or owners "shall be forever barred from recovering said land or having any easement or compensation thereof."
In order to avail themselves of this limitation the plaintiffs rely upon an amendment to the charter of the Oxford and Henderson Railroad Company (ch. 188, Laws 1879) which provides that it "shall have all the *Page 464 
powers and enjoy all the privileges and immunities possessed or enjoyed by any other railroad in the State." These amendatory words, standing alone, would undoubtedly be sufficient to serve this purpose, but the act further provides that "this act shall not apply to Henderson Township." The scene of this controversy being in Henderson Township, it must follow that the statute of limitation in question had no application to this case.
Conceding, however, that the two years limitation apply to this controversy, and that entries for the purpose of constructing a railroad may be made before the institution of the proceedings for condemnation, we will inquire whether the above-mentioned characters or the general laws authorize an entry upon the right-of-way of another railroad where there has been no such proceeding, and where the sole
object of such entry is to make a physical connection with such road.
(665) It is well settled in this State that the right-of-way of one road may be appropriated in part to the use of another. R. R. v. R. R.,83 N.C. 489. And we think that wherever there is a right to enter upon the lands of a private person for the construction of a road before condemnation proceedings, a like right may be exercised upon that part of a right-of-way which is not in actual use, subject, however, to the restraining power of the court, which will determine whether such right-of-way is necessary and should be thus appropriated.
When land is taken for the purpose of constructing a railroad all that the commissioners in condemnation proceedings are required to do is to fix the amount of compensation which should be made to the owner; but where land is taken under sec. 1957 of the Code, the commissioners are not only to fix the amount of compensation but they must determine, in the event of disagreement, "the points and manner" of the physical connection which is sought to be made. This distinction finds support in R. R. v. Love,81 N.C. 434.
We are of the opinion that the settlement of this important question is a condition precedent to the right of entry. To hold otherwise would encourage the very troubles of which this case furnishes such a signal example. It could never have been intended that the depot and sidetracks of a railroad company should be subjected to the invasion of another road, which could run its track according to its own will or caprice, and seriously interfere with the transaction of its business as well as the convenience of the public.
We think that the above section of the Code was enacted for the very purpose of avoiding such unseemly conflicts, and that the best interests of all concerned will be subserved by requiring a strict adherence to its provisions. *Page 465 
It may be argued that such harmful results may be prevented by injunction. This is open to the objection that much injury may be done, and even the peace of the State may be violated (as was apprehended in the present case) before this remedy can be obtained. (666) It may also be observed that if the court is to determine the location upon injunction proceedings it would be practically abrogating the statutory tribunal of "three disinterested and competent freeholders," which has been constituted for the very purpose of settling such disputed questions.
We are not unmindful of R. R. v. R. R., 83 N.C. 489. In that case proceedings for condemnation had been instituted before entry, but before the clerk of the court had acted the defendant entered and commenced to work. The plaintiff sought to enjoin the defendant, and the judge found all the facts necessary to show that the plaintiff had no equity. The clerk afterwards appointed commissioners, from which action the plaintiff appealed, and both appeals seem to have been heard together in this Court. By reference to the opinion it will appear that some stress was laid upon the pendency of proceedings for condemnation, and it was suggested that they might be a barrier to the prosecution of the suit for injunction. It was also suggested that the facts did not present a cause of irreparable damage. The opinion then discusses the merits of the controversy, so far as they could be properly considered at that "preliminary stage of the case," stating that "the main, if notthe only important question argued," were whether the defendant had "a right to proceed for the condemnation of lands for its use," or whether its power for that purpose had been exhausted and whether the right-of-way "was liable, under the law of eminent domain, to be taken for the use of the defendant company." The Court then proceeded to discuss these questions, and the point whether the land was subject to entry before any proceedings whatever were commenced for the purpose of making a physical connection was not directly passed upon; nor does it seem that the attention of the Court was (667) directed to the section of the Code now under consideration. We cannot, therefore, regard that decision as authority upon the particular question here presented.
In the present case the Oxford and Henderson Railroad Company alleges that it had completed its track from Oxford to Henderson to the point marked "A" in the diagram (which was within a few feet of the right-of-way of the Raleigh and Gaston Railroad Company), and "that while preparing to extend its track over said strip of land (the said right-of-way) to a point on the Raleigh and Gaston Railroad track, in order to make an intersectionand junction therewith, as it was allowed to do *Page 466 by the statute laws of North Carolina, it was forbidden to proceed any further by the officers of the Raleigh and Gaston Railroad Company."
It thus plainly appears that the use of the land was not required for the completion of the road to the terminus, Henderson, but to make a connection, under sec. 1957 of the Code. This is the avowed purpose of the entry, and as there was no agreement or condemnation proceedings it was unlawful, and the possession under such an entry would not be protected under the limitations of the charters mentioned, even if such charters were plainly applicable to this case.
Thus have we discussed this branch of the plaintiff's contention in every aspect presented by them, and our conclusion is that the Oxford and Henderson Railroad Company and its lessee, the Richmond and Danville Railroad Company, have no title to the location in question by reason of their entry and alleged adverse possession.
We will now consider the third ground relied on by the plaintiffs, which they say in their brief is "the safest basis" upon which "to ground its equity for an injunction."
3. "The plaintiffs also claim by estoppel against the defendants, who acquiesced in the possession and have consent to continue the track for its convenience and advantage."
(668) As we propose to base our decision upon the admitted facts, we will exclude from our consideration the contention of the defendants that the track was extended from the point "B" to "C" under an agreement that it was to be removed at the request of the Raleigh and Gaston Railroad Company.
We then have the following case: The Oxford and Henderson Railroad Company, under a parol agreement, extended its track in 1884 to the point "C." The Raleigh and Gaston Railroad Company has notified it to remove the same, and the plaintiffs having failed to comply with this request, the said Raleigh and Gaston Railroad Company is about to take up the said track and place the "ties and rails at as convenient a place" (for the plaintiffs) "as it is possible for it to do." This is the threatened injury complained of. There is no pretense that there was any agreement to grant an easement, and the most that can be said is that the extension was made under a parol license, and that valuable improvements have been made.
The plaintiffs rely chiefly on R. R. v. Battle, 66 N.C. 546. That case was materially different from ours. The defendant Battle had executed to the plaintiff a writing which the court said could be specifically enforced so as to create an easement. "It was not," says the opinion, "a mere license; it was given for a valuable consideration and was coupled with an interest. It is true that at law no easement passed to the company, *Page 467 
for an easement in land can be created only under seal. But the writing by which the defendant charged himself was binding within thestatute of frauds; it was a contract which, as has been heretofore said, this Court would specifically enforce." In these few words we find theratio decidendi of the case. The case of Rerick v. Kerns, 14 Sergt. 
Rawle, 267, cited in the opinion in Battle's case, is from Pennsylvania, where the doctrine of part performance obtains, and is not good authority here, where that doctrine has long since been repudiated. The quotation from that case was unnecessary, and the principles there enunciated as to the binding effect of an executed parol license are unquestionably opposed to the decisions of this Court, as well as the (669) general current of authority.
"The doctrine of early cases, which converted an execution license into an easement, is now generally discarded as being `in the teeth of the statute of frauds.'
"The cases of Ricker v. Kelly, 1 Me. 117, and Clement v. Durgin, 5 id., 9, cited by the defendants' counsel, have now little following, and the case of Rerick v. Kerns, 14 S. R., 267, also relied on, which was an action at law for damages in favor of the licenses, is followed in but few states. Houghtaling v. Houghtaling, 5 Barb., 383; Jamieson v. Millemann, 3 Duer., 255; Washb. Easm., 24.
"A simple reference to some of the more important cases, in support of the views herein expressed, will suffice. Cook v. Stearns, 11 Mass. 533;Mumford v. Whitney, 15 Wend., 380; Wolf v. Frost, 4 Sandf., ch. 72; Footev. R. R., 23 Conn. 214; Bridges v. Purcell, 18 N.C. 492; Hazelton v.Putnam, 3 Pin. (Wis.), 107; Woodard v. Seely, 11 Ill. 157; Wood v.Leadbitter, 13 M. W., 938; Wiseman v. Lucksinger, 84 N.Y. 31; S.C., 38 Am. Rep., 479."
In cases where the license is connected with a valid grant, as of chattels, or fixtures, upon the land of the licensor, susceptible of being removed, it is subsidiary to the right of property and irrevocable to the extent to protect the licensee and save to him the right of entry — the right of possession following the right of property. Nettleton v.Sykes, 8 Metc., 34; Heath v. Randall, 4 Cush, 195; Wood v. Leadbitter,supra. But where it is sought to couple a license with a parol grant of the interest in the realty, the attempted grant being void, the transaction remains a mere license. Wood v. Leadbitter, supra; Johnson v. Thillman,29 Minn. 95 Alabama Law Journal, 18.
The following words from Wood v. Leadbitter, 13 M. W., (670) 838, cited in Battle case, declare, we think, the correct principles; "But where there is a license by parol, coupled with a parol grant, or pretended grant of something which is incapable of being granted otherwise *Page 468 than by deed, there the license is a mere license; it is not incident to a valid grant, and it is therefore revocable. The same rule prevails in equity, with this difference: that whereas the courts of law require thegrant to which the license is incident to be valid at law, a court of equity only requires that it shall be one that is regarded as a valid grantin that court."
In our case there is, as we have said, no attempt to grant an easement, and the question is whether a parol license which has been acted upon and the enjoyment of which necessarily involves expenditure in the way of improvements, can be revoked at the will of the licensor. This is expressly decided in the affirmative in Kivett v. McKeithan, 90 N.C. 106.
The plaintiff, with the verbal consent of the defendant, built a milldam on the defendant's land. After the mill had been in operation for several years the defendant revoked the license and notified the plaintiff to remove the dam, which he declined to do, and the defendant himself tore it down. The plaintiff sued him for the alleged trespass and relied upon the license and that fact that in pursuance thereof he had built his milldam and expended money. The court, however, held that a parol license relating to land, whether voluntary or supported by a valuable consideration, may be revoked by the owner without incurring liability in damages.
In speaking of the doctrine of equitable estoppel, which is invoked in this case, the court says: "In answer to a suggestion of bad faith in the defendant, in inviting the expenditure and then depriving the plaintiffs of its fruits, we must say all this is done with full knowledge of the law that the permission may be recalled, and it is the plaintiff's folly (671) and the result of misplaced confidence for which the law makes no provision.
"The plaintiff could have guarded against the loss by purchasing and taking a conveyance of the easement from the defendant or, if this could not be done, by pursuing the remedy pointed out in the statute (Code, sec. 1749) for the condemnation of lands," etc.
It is needless for us to cite and review the many conflicting decisions upon the subject in other States, as this Court has emphatically put at rest, with us at least, all doubt upon the question.
As the doctrine is so well stated in Kivett v. McKeithan, supra, andMcCracken v. McCracken, 88 N.C. 272, we think it proper, in view of the importance of this case, to reproduce a part of the language of the opinions in those cases.
In Kivett's case the late Chief Justice says: "The cases in which it has been held that a license acted on and expenditures made upon the *Page 469 
faith of its continuance, when founded on a valuable consideration, vests an interest beyond the power of revocation at the will of the owner who gives it, proceed upon the same considerations and reasoning which support the doctrine of part performance, and these are that the statute will not countenance an attempted fraud and render it successful. Many will be found collected in the notes of the learned and discriminating editor of the American Decisions appended to Ricker v. Kelly, 10 Am. Dec., 40; Rench v.Kern, 16 Am. Dec., 501, and Mumford v. Whitney, 30 Am. Dec., 71. But the subject of a parol contract under which improvements in good faith have been put upon the land, and the relative resultant interests and rights to and between the parties to it, has been so fully considered in the recent case of McCracken v. McCracken, 88 N.C. 272, but little remains but to announce the conclusion there arrived at.
The Court uses this language (Ruffin, J.): "If we consider (672) the contract as a license between the parties, as a license given to the plaintiff to enter upon the land and erect and enjoy the improvements, we cannot perceive that it in the least serves to help his case. If purely a license, it excused, it is true, his entry upon the land, which otherwise would have been a trespass. But it was still revocable, and its continuance entirely dependent upon the will of the owner. If intended to pass a more permanent and continuing right in the land, whereby the authority or estate of the owner could be in the least impaired, it was then not only necessary to be evidenced by writing, but would only be made effectual by deed."
In view of the reasons given and the authorities cited we are constrained to hold that the Oxford and Henderson Railroad Company has acquired no interest in the right-of-way in question. This being our conclusion, it necessarily follows that the said company cannot impeach the proceedings under which the said right-of-way was condemned to the use of the Durham and Northern Railroad Company.
In Marshall v. Comrs., 89 N.C. 103, it is said that where the relief sought is the object of the action, and not merely auxiliary, the injunction should be continued to the hearing; but this rule only applies where it is possible that the plaintiff may be entitled to the relief demanded, and as we are of the opinion that upon the pleadings and the admitted facts the plaintiffs are not entitled to such relief, it would be useless to continue the injunction until the final hearing.
The late distinguished Chief Justice concurred in this disposition of the case.
The plaintiffs moved in this Court for leave to file additional affidavits. After mature consideration we declined to grant the motion, *Page 470 
and we have therefore decided the case upon the testimony which was heard by his Honor below. If, as the plaintiffs suggest, they have (673) newly discovered testimony tending to show the grant of an easement, valid either at law or in equity, they may still avail themselves of it either by amendment in the court below or by a new action, but no restraining order should be granted unless a prima facie
case is presented in strict conformity to the principles which we have declared in this opinion.
Much trouble and litigation would have been avoided had the Oxford and Henderson Railroad Company obtained a grant of an easement or, failing to do so, pursued the legal remedy provided in sec. 1957 of the Code. It may not be improper to observe that this provision of the Code is mandatory, and was not intended for the benefit of railroad companies alone. Extraordinary privileges are granted such corporations, and it has been well settled by the "Granger Cases," 94 U.S., that "when private property is devoted to a public use it is subject to public regulations." Accordingly it has been provided that railroads shall "unite" . . . "in forming connections," etc., and if they cannot agree commissioners are to be appointed to determine the "points and manner" of making the same. It is very clear that the purpose of the Legislature was to promote the convenience of the public, and this paramount object should not be defeated by the dissensions and conflicts of rival corporations.
There is error. Let this opinion be certified to the Superior Court, to the end that the injunction be dissolved.
Error.
Cited: Allen v. R. R., 106 N.C. 527; Jones v. Comrs., 107 N.C. 265;Hall v. Turner, 110 N.C. 302; Emry v. Nav. Co., 111 N.C. 99; Bass v.Nav. Co., ib., 454; Exp. Co. v. R. R., ib., 472; S. v. Fisher, 117 N.C. 739;Hendon v. R. R, 125 N.C. 128; Lumber Co. v. Hines, 127 N.C. 132;Power v. Wissler 160 N.C. 274; R. R. v. R. R., 161 N.C. 537; Herndon v.R. R., ib., 654.