## STATE v. B. J. FISHER.

*Indictment for Obstructing Highway—Highways—Title by Prescription—Dedication.*

1. Where the public claims title to the easement in a highway by user, the burden is upon the State, or its agencies, to show title by adverse possession.

.2 The best evidence of user by the public of a highway is the fact that the proper authorities have appointed overseers and designated hands to work and assumed the responsibility of keeping it in repair.

.3 The owner of land cannot, by executing a deed to the public conveying a right of way to a highway, compel the authorities to assume the burden of repairing it unless the properly constituted agents of the municipality accept it.

4. In order to acquire title to a street as laid out by the owner of land in an addition to a town, there must be an acceptance before the owner revokes the offer.

5. Where an owner of property adjoining the city had offered to dedicate certain parts of it to the public as highways, by platting the same as an addition to such city, an entry upon one of such streets or highways by a street railway company, under a license from the city, after the owner had recalled his offer, cannot operate as an acceptance thereof by the city.

6. Where one prosecuted for obstructing a highway is shown to
   have thrown open the street in question to the use of the
   public by platting the ground of which it had formed a part
   as an addition to the city which it adjoined, the fact that he
   refused, subsequently, to grant the city a right of way over
   the alleged street, after the city limits were extended, and
   that the city then proceeded to institute condemnation pro-
   ceedings to acquire the same, sufficiently shows that defend-
   ant had revoked his offer.

This is a CRIMINAL ACTION for obstructing a public
street and highway, tried before *Starbuck, Judge,* and a
jury, at the August Term, 1895, of the Superior Court
of GUILFORD county.

The indictment was as follows:

"The jurors for the State upon their oath present that
on the first day of August, in the year of our Lord one
thousand, eight hundred and ninety-five, there was and
theretofore had been and still is in the county of Guilford
a certain public road and street and common highway
leading from the court house in Greensboro, in said
county, in a northerly direction, towards, unto and beyond
the corporate limits of said city of Greensboro in said
county, called North Elm street, for all good people of
said State to go, return and pass on foot or horseback;
and with their coaches, carts and carriages at their free
will and pleasure, in which said county of Guilford, on
said first day of August, A. D. 1895, B. J. Fisher, late
of said county, with force and arms, at a certain place
within the corporate limits of said city of Greensboro,
unlawfully, wilfully and injuriously, upon and across the
said public road, street and common highway a certain
trench and ditch of the depth of three feet and of the
width of four feet, then and there did dig, cut, open
and make, by which the said public road, street and com-
mon highway last aforesaid, was so obstructed, altered

and changed that the good people of the State aforesaid, in, by, through and over and along the said public road, street and common highway could not go, return and pass on foot, on horseback, with their coaches, carts and carriages so freely as they ought and were wont to do to the great damage and common nuisance of all the good citizens of the State going, returning, passing and repassing, in, along and through the last mentioned public road, street and common highway, to the evil example of all others in like cases offending, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

To this indictment the defendant pleaded not guilty and a jury was sworn and impanelled and returned the following special verdict:

"That in the year 1890 the defendant graded and threw open to the use of the public, a way through land owned by him, lying north of and adjoining the corporate limits of the city of Greensboro; that North Elm street was in 1890 a street in the city of Greensboro, extending to the northern limit of the said city, said limit being also the boundary of the defendant's lands; that the said way was constructed from the northern terminus of and was of the same width and direction as North Elm street; that in 1891 the charter of said city was so amended as to include within the city limits said land of the defendant.

"That the way opened by the defendant was used by the public for purposes of general travel without interruption from the time of its opening till June, 1895.

"That contemporaneously with the construction of said way the Steel and Iron Company, owning land lying north of defendant's land, opened a way beginning at the north boundary of defendant's land at the terminus of the way

opened by the defendant, leading through the land of said company and terminating in a field. The ways opened by said company and the defendant were constructed according to surveys made by the same surveyor. The way opened and graded by the defendant at its northern terminus when it reached the beginning of the way opened by the company was on a grade from 18 to 36 inches lower than the grade of the latter way; some time thereafter the company so changed the grade as to make the grade of the one way fit that of the other. Said company also opened cross-ways on its land leading into said way constructed by it. There are houses built along said cross ways; the way opened by the defendant connecting with that opened by the company affords the most direct, but is not the only route from said houses to the centre of the city.

"That the defendant has sold no part of his land through which said way passes.

"That in April, 1891, the aldermen of the city divided the city into six wards and by resolution established the boundary between two of the wards in the following words as appears from the minutes of their proceedings: 'The eastern line of Ward No. 1 and the western line of Ward No. 2 shall be North Elm street and its extension to the new corporate limits.'

"That in October, 1891, said aldermen adopted a resolution that North Elm street be extended from the old corporation limits to to the new.

"That in the year 1891 the city instituted a proceeding to condemn the way opened by the defendant and made it a public street and judgment was rendered by the board of aldermen condemning the same; from this judgment the defendant appealed to the Superior Court, and at August.

Term, 1893, judgment was rendered quashing the proceeding.

"Pending said appeal one J. D. Kase purchased two lots from the Steel and Iron Company on the way opened by said company, being induced to make said purchase by the belief that the way opened by the defendant was a public street.

"Also pending said appeal the city granted permission to the Belt Line Railway Company to construct a street railway on said way; said railway was thereupon constructed and used for a time, but has not been used since said judgment of the Superior Court; the track still remains.

"That in 1895 the defendant was present at a stockholders' meeting of the Steel and Iron Company; at said meeting the Steel and Iron Company effected a sale of its interest in said railway to the Cone Company. This was done by a unanimous vote, but the defendant at the meeting claimed the way, over which said railway was in part constructed, as his own property.

"That in 1890 the defendant had a map made of his property, showing therein North Elm Street, and the said way constructed by him from the terminus of said street, and also cross ways leading over his property into said way, with lots plotted thereon ; but said cross-ways were never opened nor were any of the lots ever sold.

"That in June, 1895, the defendant cut a ditch three feet wide and two feet deep across said way, thereby obstructing travel thereon.

"That neither the county nor city authorities have ever worked said way nor exercised any acts of control or supervision over it or publicy recognized the same as a public highway, unless the permission granted to construct the railway thereon or the establishment of the boundary line

STATE *v.* FISHER.

between the wards as shown by reference to the minutes of the board be such acts of recognition.

"If upon these facts the court should be of opinion that as a matter of law the defendant is guilty, then the jury so find ; if upon these facts the court should be of opinion that as a matter of law the defendant is not guilty, then the jury so find."

His Honor, being of opinion that upon these facts the defendant was not guilty, adjudged that the defendant was not guilty and that he be discharged, from which judgment the solicitor appealed.

*The Attorney General*, for State (appellant).
*Messrs. D. Schenck* and *R. M. Douglass*, for defendant.

AVERY, J.: As a rule the right to the easement in a public highway is acquired either by dedication, the exercise of the power of eminent domain, or user. *Kennedy* v. *Williams*, 87 N. C., 6. After the execution of grants to the easement or the rendition of a final decree in condemnation proceedings, controversies seldom arise as to the existence of the servitude imposed by either of the two methods. Where the public claims title to the easement by user, however, the burden rests upon the State or its agencies, such as towns, as it does upon an individual claiming the right to pond water upon the land of another, to show title by adverse possession. The public, like an individual attempting to establish title under like circumstances, must prove such acts as indicate a continuous and unequivocal assertion of the right by the public for twenty years, and the best evidence of such user is the fact that the proper authorities have appointed overseers and designated hands to work and assumed for the public the responsibility of keeping the way in repair. *Kennedy* v.

*Williams, supra ; Frink* v. *Stewart,* 94 N. C., 484 ; *State* v. *Purify,* 86 N. C., 682 ; *State* v. *McDonald,* 8 Jones, 284. The continuous use by the people living in the neighborhood or in the State for a period of even sixty years does not deprive the owner of his right to resume control, nor does it devolve upon the properly constituted authorities of the county or the town, as the case may be, the duty with the incidental expense to the public of its reparation. *State* v. *McDonnel, supra ; Boyden* v. *Achenbach,* 79 N. C., 539 ; *State* v. *Johnson,* 11 Iredell, 647. In Johnson's case, *supra,* Judge PEARSON said that 20 years was "the shortest time that there could have been the presumption of a dedication," and added in, discussing the facts of that case, "Still that has not been done, and so there has neither been an express user or implied dedication." A mere verbal license or permission to enter upon the land of another for the purposes of a private way excuses the person entering pursuant to it from liability for a trespass, but is always revokable at the option of the owner who grants it. *Railroad* v. *Railroad,* 104 N. C., 658. Where it is the intent of the parties in case of a mere license "to pass a more prominent and continuing right in the land whereby the authority or estate of the owner could be in the least impaired, it is then not only necessary to be evidenced by writing but would only be made effectual by deed." *McCracken* v. *McCracken.* 88 N. C., 272. The owner of land cannot by executing a deed to the public conveying a right of way to a highway, compel the authorities to assume the burden of repairing it unless the properly constituted agents of, the county or town accept it. *Kennedy* v. *Williams, supra.* The ordinary but not the only method of signifying such acceptance is by working it in the usual way, as a public street, or the appointment of an overseer and the assignment of

hands to work it by the county. The implication that the dedication is accepted may arise from other acts of dominion which show an unequivocal claim by the public to the benefits or the burdens incident to its full and complete enjoyment.

When the defendant opened up the street, then outside of the confines of the city of Greensboro (in the year 1890), if, before the subsequent passage of the Act (Laws of 1891) which extended the limits so as to include it, he had sold a single one of the lots abutting on this apparent extension of North Elm street, he and those claiming under him would have been estopped from denying the right of such purchaser and those in privity with him to use the street, as laid down in the plot and called for as his boundary line in the deed conveying it to him, to all intents and purposes as a highway, and this dedication of the easement appurtenant to the land sold would have been, as between the parties, irrevocable, though the street had never been accepted by the town for public use. *Moose* v. *Carson*, 104 N. C., 431. The estoppel *in pais* arising out of the fact that the grantee in such cases has been induced to part with money or its equivalent upon the representation of the grantor that a highway would be opened, makes the street as between them what it was represented to be, *Grogan* v. *Town of Haywood*, 4 Fed. Rep., 164. The offer of the easement to the public as well as the grant of the appurtenant right to its use as a highway would thus have been made irrevocable, and though the city of Greensboro could not have been, against the wish of its governing officers, subjected to the burden of keeping the open way in repair, yet they might have accepted, as a continuing offer to the city at any future time, the street which as between the parties to the deed the grantor could not deny was dedicated to public use. But there was no such sale and

consequent estoppel to prevent the defendant from revoking a license apparently given to the public to use the extension or from recalling the offer. Whatever might have been the effect of its acceptance at an earlier period the city did not signify in the proper manner its willingness to assume the responsibility of making it a part of the highway under its care, until the alleged offer was revoked.

The jury find as a part of the special verdict, "That in the year 1890 the defendant graded and threw open to the use of the public a way through land owned by him, lying north of and adjoining the corporate limits of the city of Greensboro." The Attorney General insists that this was a dedication of the street for the use of the city, though not then within its boundaries. The legislature by the Act of 1891, Ch. 300, ratified March 7th, extended the corporate limits of the city so as to include the extension of the street opened by the defendant. On the 4th of September following the mayor and aldermen passed a resolution looking to the condemnation of the way opened by him and thereby instituted the proceeding for that purpose which was quashed on appeal to the Superior Court at August Term, 1893. Under permission granted by the city, while the appeal was pending, a street railway was constructed over the extension of Elm street by the Belt Line Co., but it was not operated after the judgment of the court in 1893. The Attorney General insists that this was an adverse occupancy which in contemplation of law amounted to an acceptance. He contends further that in 1895 the authorities of the city divided it as extended into wards, calling for the extension of Elm street as a boundary and by this recognition of it as a street, accepted it. It was contended by the learned counsel for the defendant that while the public could accept and use the easement acquired by the purchaser of an abutting lot by way of

estoppel, a dedication could not be made directly to the State or to one of its agencies by estoppel but only by grant; and that proof of twenty years adverse user by the public (as was said by PEARSON in Johnson's case, *supra*) raised a presumption of dedication by actual grant or of purchase under condemnation proceedings. The defendant insisted in support of this contention that it had never been held in North Carolina that the public, though possession was taken with the assent of the owner, could acquire an easement any more than an individual by the exercise of actual dominion for a less period than twenty years, and that in no case had a defendant been convicted where the charge was predicated upon the existence of a highway, and dedication was shown by user, without actual grant for a less period than twenty years.

It is not necessary to pass upon this question involving the application of the statute of frauds in disposing of this appeal. If it be conceded that the finding that the defendant threw open the street to the public in 1890 before it became a part of the town, was a dedication of it for the purposes of a public street, we would still be confronted by the significant fact that when the defendant refused in September, 1891, to grant the right of way, the city proceeded to institute condemnation proceedings, and, if he had in any way verbally dedicated or offered the right to the public, it was withdrawn when he subsequently refused to execute the grant, and a controversy arose involving the right of way. It is needless to cite authority to show the right of the land owner to revoke until bound by acceptance or estoppel. Whatever other differences may exist, that is admitted by all. If the defendant had offered to dedicate and had recalled his offer, the subsequent entry upon the street under a license from the city by the Street Railway

Company was in no view an acceptance. There was no error and the judgment is affirmed.

Affirmed.